239 So.2d 136 (1970)
Wilbur Harry LEE, Appellant,
v.
STATE of Florida, Appellee.
No. M-60.
District Court of Appeal of Florida, First District.
July 28, 1970.
*137 Wayne E. Ripley, Jacksonville, for appellant.
Earl Faircloth, Atty. Gen., and Horace A. Knowlton, III, Asst. Atty. Gen., for appellee.
JOHNSON, Chief Judge.
This is an appeal from a judgment of guilty of murder in the second degree and sentence of 20 years, based upon a jury verdict of guilty. Post-conviction relief was denied.
The appellant raises several points in his brief wherein he contends the trial court committed error, but only one point appears to us to have merit. The first point raised is as follows:
Did the court err in giving the so-called "Allen" or "Blockbuster" charge to the jury after they had returned to the courtroom following nearly five hours of deliberation just before midnight on May 8, 1969, to report failure to agree?
The appellant properly preserved for appellate review the error complained of by objecting to the giving of an instruction to the jury after their return to the courtroom after some five or six hours of deliberation on the case in the jury room.
To get the complete picture leading up to the giving of the complained of instruction, we need to show the entire colloquy between the court and the jury, as follows:
"(At 11:54 o'clock p.m., the jury returned to the courtroom and the following further proceedings were had.)
"THE COURT: Ladies and gentlemen, do we understand that you have a question of some kind?
"A JUROR: Yes, sir, we can't come to a complete agreement. We (inaudible) 
"THE COURT: Are there some specific areas of this agreement among the jury; is that the idea?
"A JUROR: Well, yes, sir, that's 
"MR. DEANE: Your Honor, may we approach the Bench before 
"THE COURT: Yes.
(Side-bar Conference.)
"THE COURT: Let me see, Mr. Davis, hand me the file, please.
"Ladies and gentlemen, has the jury been able to exchange ideas with one another and freely discuss the case and all that sort of thing?
"A JUROR: Yes.
"THE COURT: Let me ask you this: Is the area of disagreement, if it revolves around the testimony of any particular witness or anything of that nature or is it  is that the problem, disagreement as to the testimony of a particular witness?
"A JUROR: Not necessarily a particular witness.
"THE COURT: I see. I'm sure that each member of the jury realizes the importance of reaching a verdict if at all possible, and the  if the Court could see that you ladies and gentlemen receive lodging for the balance of the night, at some local hotel, in a group, and then you could return and deliberate tomorrow, or you folks could continue your deliberations tonight.
"Let's see, I need to find one matter that I'm looking for here.
"Ladies and gentlemen, the Court feels that it is appropriate to read to you another instruction at this time, and then to permit you to retire and continue your deliberations.
"In addition to that, if possible, we would like to have an expression of opinion from the jury whether they would like to cease deliberating now and go  we could have you taken, as I said, to a hotel here and you could complete  you could spend the night and then return tomorrow and continue *138 your deliberations, if  if it's a question of just needing additional time, you see, but the additional charge that the Court wishes to read to you at this time is as follows:
"Ladies and gentlemen, in a large proportion of cases, absolute certainty cannot be expected. Although the verdict to be rendered by you must be the verdict of each one of you acting individually, and not a mere acquiescence in the conclusion of your fellow jurors, yet you should examine the questions before you with candor, and with a proper regard and deference to the opinions of each of your fellow jurors.
"It is your duty to decide this case if you can conscientiously do so, and you should listen with a disposition to be convinced to each other's arguments.
"If the much larger number of you are for conviction, a dissenting juror should consider whether his doubt was a reasonable one, which made no impression on the minds of so many other men equally honest, equally intelligent with himself. If on the other hand the majority of you are for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of their judgment, which is not concurred in by the majority.
"I particularly impress upon you that the verdict which you will render should represent the opinion of each one of you acting individually, yet it by no means follows that opinions may not be changed by conference in the jury room.
"The very object of the jury system is to secure unanimity by a comparison of views and by arguments among yourselves. Each of you should listen with deference to the argument of the others, and with a distrust of your own judgment, if you find that a large majority of the jury taking a different view than the view you take.
"You should not go back into your jury room with a blind determination that the verdict shall represent your opinion of the case at this moment, nor should you close your ears to the arguments of your fellow jurymen who are equally honest, and equally intelligent as yourself.
"Now, ladies and gentlemen, with these additional comments in mind, the Court requests that you return to your jury room and see if you cannot reconcile your differences, and return a verdict agreeable to the convictions of each one of you acting individually.
"Now Mr. Davis, I'll ask that you hand that additional written instruction to the jury, and I'd like to have the jury keep in mind, please, if they will, that the Court is prepared, if you believe that you would like to do it and believe that it would assist you in your handling of this case, to recess for the rest of the night, send you to a downtown hotel, let you return tomorrow fresh where you would have all day long to deliberate on the case, if necessary, but at this time, with the additional instructions in mind, I will ask that you return to the jury room and continue your deliberations.
"(Thereupon, at 12:05 o'clock a.m., Friday, May 9, 1969, the jury again retired to the jury room to resume its deliberations.)"
The original facts involved are: The appellant, defendant below, killed a man named Sam Sharp. There was evidence of drinking, of fussing, and some reciprocal exchange of blows, including a rather bad cut on the head of the defendant, alleged to have been inflicted by the deceased on the defendant by use of a meat cleaver. The defendant shot the deceased. This case had been tried twice previously, each such trial resulting in a mistrial.
*139 The questioned instruction set out in full supra, is generally referred to as a "blockbuster charge", a "dynamite charge" or the "Allen charge", so named from the United States Supreme Court case of Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) wherein a similar charge was used.
In this case the jury was comprised of both women and men, both white and colored. When the jury was told by the court immediately prior to the giving of the "Allen" charge, supra, that it was important to reach a verdict if possible, and that the Court could see "that you ladies and gentlemen receive lodging for the balance of the night, at some local hotel, in a group, and then you could return and deliberate tomorrow, or you folks continue your deliberations tonight." Then the charge complained of was given.
The appellant contends that the giving of this charge, coupled with the unexplained manner of lodging in a group, at the time of night it was given, was both misleading and coercive and prejudicial to the defendant. With this, we have to agree under the circumstances. We can readily understand that the able trial judge, in view of the history of the previous trials, was probably most anxious to get a verdict, and in his efforts to be helpful, we believe went a little too far in giving the "Allen or Blockbuster" charge which he gave. Also, the statement of the court to the jury to the effect that they could be taken to a hotel for the night, and that they would be kept as a group, probably resulted in harmful coercion, prejudicial to the defendant. We feel that further explanation should have been given about the manner in which the group  the jury  could have been considered kept together, although separated according to sex. The instruction as given, if given under different circumstances, would not have been improper, but the giving thereof at the late hour of the night, and without a clearer explanation of how the jury could be kept together over night at a hotel, we believe, and so hold, renders the instruction objectionable and prejudicial to the defendant's rights. Furthermore, one juror had admitted the jury couldn't agree, but that the jurors were still able to calmly and intelligently discuss the case, even after the long period of more than five hours.
While it is very proper that jurors should discuss the evidence among themselves in the jury room, and engage in an exchange of ideas, the court should not so interfere with these deliberations with additional instructions which tend to embarrass a single juror in holding to his honest convictions.[1] Some states have now forbidden the use of the charge in question because of the fact, primarily, that it does have a normal tendency to create the impression that the court is directing that a verdict be brought in and that the minority view in the jury room should simply acquiesce in the judgment of the majority, not because the minority juror or jurors have changed their opinion about the evidence, but simply because they are under a mistaken understanding that it is part of their duty to try to comply with the wishes of the court as expressed in the so called "Allen or Blockbuster" charge. This also tends to prejudice the defendant's right to a hung jury. Nothing should be said by the trial court to the jury that would or could likely influence the decision of a single juror to abandon his conscientious belief as to the correctness of his position.
In the case sub judice, with all the factors considered, we believe, and so hold, that the defendant is entitled to a new trial.
The judgment and sentence appealed from is therefore reversed and the cause remanded for a new trial.
RAWLS and SPECTOR, JJ., concur.
NOTES
[1] Jones v. State, 92 So.2d 261 (Fla. 1956).