462 So.2d 1175 (1985)
Orestes RODRIGUEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 83-2066.
District Court of Appeal of Florida, Third District.
January 15, 1985.
Rehearing Denied February 19, 1985.
Jon W. Burke and Linda Dakis, Miami, for appellant.
Jim Smith, Atty. Gen., and Randi B. Klayman, Asst. Atty. Gen., for appellee.
Before NESBITT, DANIEL S. PEARSON and JORGENSON, JJ.
PER CURIAM.
Orestes Rodriguez was found guilty by a jury of murder in the first degree. He alleges as error the trial court's failure to use the jury deadlock instruction approved by the Florida Supreme Court.[1] Because we agree the deadlock charge actually given constituted fundamental error, we reverse and remand for a new trial.
This case was tried to a jury for a one-week period and was submitted late Friday afternoon. Following five hours of deliberation the jury reported a deadlock. The trial court, in the presence of the jury, indicated that five hours was an insufficient amount of time and that he could not "possibly consider this being a hung jury." The jurors were instructed to return to court the following morning at 10:00 a.m. to resume deliberations. The jury returned Saturday morning and deliberated until 4:10 in the afternoon. At that time, the trial court gave the following charge to the jury:[2]
THE COURT: Let's have it quiet in the courtroom, please.
Ladies and gentlemen of the jury I want you to listen very carefully and listen to what I say and clear your minds at this moment.
I want you to know that everything that you are doing right now is appreciated and don't think that it is not. I am not trying to cite you. I just want you to know we have all been through a lot together, all of us. We haven't been through what you are going through, but that is not our function. We all appreciate it.
Your job is two fold in this case. The first aspect of this case is to listen and ladies and gentlemen I can't ask for any more than that, what you have done, but the second aspect is the critical aspect and that is for you people to reach a verdict.

*1176 Two things have been asked, one has been performed thus far. Then we know what you're going through. We do appreciate it. I want you to understand. I want to stress that everybody in this courtroom we've been together a rather long time now. What this involves, ladies and gentlemen, is a melting of divergent backgrounds and personalities into one decision. It sounds simple, it's not but that is what it is. You must bring yourselves together to reach a verdict, ladies and gentlemen, not to fragment and split apart, because ultimately what it comes out is 12 heads into one, 12 mouths into one to speak that verdict that we are all looking for. I hope you all realize that, ladies and gentlemen.
I did some computation that are [sic] absolutely staggering on this matter. To me it is staggering. We have in excess of 62 hours. My computation is 62 hours of trial time involved here. Now I am counting two alternate jurors that we dismissed and I am taking 12 of you and I am multiplying that 62 hours. I come out with 724. Let's call it man hours that you people have invested in this trial. Then you take myself, the judge, with my secretary two hours and the attorneys, the translators, the court clerk, the court reporter, everybody involved in this trial. We are over  well over a thousand hours here in this trial invested. Your particular hours invested in this matter will amount to 40 hour week. If you're talking a great sum two months of working that's what we have invested in this trial.
Ladies and gentlemen, last night there was a message that we were a hung jury. I never had a hung jury and I don't want to accept that aspect. So I allow that out to you now so that you will understand that I know that you people can reach a verdict. Now I am going to give you a personal philosophy. I sat as judge in County Court and I have been in the Circuit Court as judge. I have handled and made decisions in well over 30,000 cases. That is a lot of work, ladies and gentlemen. A lot of decisions that I made I've gone home and I've gone to sleep and I have gotten up the next day feeling good about my past and continuing on with making these decisions.
Ladies and gentlemen you can make a decision in this case. I know that you can do it, because regardless of everything that took place before and everything that is going to take place when you go back into that room at this trial, ladies and gentlemen, is you. It's nothing else. It is out of our hands. It is out of our control and it only amounts to you people melting your minds and personalities into one to reach a verdict. I have faith in you, ladies and gentlemen. I know you can do it. It was never promised it would be an easy road. You know what we went through before the trial was over in presentation.
Ladies and gentlemen you have so much invested in this. I have so much invested in this. We all have so much invested in this. We can't do without you. I can't put it in any clearer way, any better way, but I do know that a verdict can be reached. There are trials that go on all day long, you're not involved. They do happen everything is important, but ladies and gentlemen the most important aspect right now at this time is you to set aside egos and personalities that are separating and melt them together into one cozy  together unite. I hope that I am clear.
Bill, if you will take them back into the jury room, please.
Please try if possible to deliberate a little harder, I guess. Thank you all very much.
Following the charge the jury retired and, twenty minutes thereafter, delivered a verdict of guilty.
The state argues that the giving of the instruction did not constitute reversible error because (1) the instruction amounted to nothing more than a "pep talk," and (2) the defendant's failure to object constitutes a waiver for the purposes of appeal. The state's first position is without merit. The *1177 instruction given in the instant case was not the "balanced" type approved by the Florida Supreme Court in State v. Bryan, 290 So.2d 482 (Fla. 1974). See also Gardner v. State, 405 So.2d 470 (Fla. 3d DCA 1981). Rather, the instruction could have only led the jurors to believe that they were required to return a verdict, thereby prejudicing the defendant's right to a hung jury. Bryan, 290 So.2d at 484; Nelson v. State, 438 So.2d 1060 (Fla. 4th DCA 1983) (jury instruction which made it appear that unless a verdict was reached great waste would occur and the court's confidence in the jury's common sense would be betrayed constituted reversible error); Kozakoff v. State, 323 So.2d 28 (Fla. 4th DCA 1975), cert. denied, 336 So.2d 1184 (Fla. 1976); Bell v. State, 311 So.2d 179 (Fla. 1st DCA 1975); Lee v. State, 239 So.2d 136 (Fla. 1st DCA), cert. denied, 240 So.2d 642 (Fla. 1970).
In support of its second position the state relies upon Tejeda-Bermudez v. State, 427 So.2d 1096 (Fla. 3d DCA 1983); Sayan v. State, 381 So.2d 363 (Fla. 4th DCA 1980); and Armstrong v. State, 364 So.2d 1238 (Fla. 1st DCA 1977), cert. denied, 373 So.2d 456 (Fla. 1979). The state's reliance upon these cases is misplaced. Armstrong holds that the giving of an approved deadlock instruction before a jury impasse is indicated is not fundamental error. Tejeda-Bermudez holds that requiring a jury to continue to deliberate after reporting a deadlock is not error. We deem it significant that the deadlock instructions given in Armstrong and Tejeda-Bermudez were of the "balanced" type approved by the Florida Supreme Court.[3] In the instant case, the trial court deviated substantially from the approved deadlock charge, and no subsequent curative instruction could have removed from the jurors' minds the belief that they were required to reach a verdict.
The issue of whether a manifestly coercive deadlock charge is fundamental error appears to be a question of first impression in this state.[4] In Nova v. State, 439 So.2d 255, 262 (Fla. 3d DCA 1983), this court stated:
Error which is said to be fundamental is, among others, one which "reaches down to the legality of the trial itself," Hamilton v. State, 88 So.2d 606, 607 (Fla. 1956); Gibson v. State, 194 So.2d 19 (Fla. 2d DCA 1967); involves a violation of a defendant's rights which "will always be harmful, and it is very difficult for a court to determine when it is not," Demps v. State, 416 So.2d 808, 810 (Fla. 1982), quoting United States v. Hammond, 598 F.2d 1008, 1013 (5th Cir.1979); in short, one that goes to the essence of a fair and impartial trial, State v. Jones, 377 So.2d 1163 (Fla. 1979); Frankowitz v. Beck, 257 So.2d 918 (Fla. 3d DCA 1972). Because "[t]he right of an accused to a trial by jury is one of the most fundamental rights guaranteed by our system of government," Floyd v. State, 90 So.2d 105, 106 (Fla. 1956), and is the cornerstone of a fair and impartial trial, Florida Power Corporation v. Smith, 202 So.2d 872 (Fla. 2d DCA 1967), an infringement of that right constitutes a fundamental error.
Based upon the discussion that follows we conclude that the trial court's error "[went] to the essence of a fair and impartial trial," Nova, 439 So.2d at 262, and, therefore, constituted fundamental error.
The particular vices of the charge here are (1) it tainted the jurors' decision-making process by exhorting them, as good citizens, *1178 to consider such extraneous and improper factors as the government's fiscal health in arriving at a decision and (2) it instructed the jurors that they must reach a verdict. In Nelson, the court found a like charge required reversal where the error was preserved by a timely motion for mistrial. What was said there, however, supports our conclusion that reversal is required even in the absence of a timely objection or motion:
It is the genius of our jury system that twelve impartial persons, individually, applying a subjective standard, come to a common conclusion of defendant's guilt beyond a reasonable doubt. This fundamental principle becomes subverted if a jury member is pressured to defer to the opinion of his peers, for unanimity is made a sham thereby. An objective standard is in effect substituted for the subjective, by virtue of the implication that the majority opinion is reasonable, and the minority, unreasonable.
Here the trial court may have led one or more jurors to capitulate, against his or her conscientious judgment, because the court made it appear that unless a verdict was reached great waste would occur and the court's confidence in the jury's common sense would somehow have been betrayed.
Nelson, 438 So.2d at 1062-63.
In the final analysis, the defendant was entitled to have his guilt or innocence determined by each individual juror considering and weighing the evidence presented, the law applicable to the case, and the positions of fellow jurors. The jurors should not have been required, as the trial judge told them, to consider the public moneys expended on the trial and to melt their "minds and personalities into one to reach a verdict." These admonitions irreparably deprived the defendant of an impartial jury in violation of rights guaranteed the defendant by the federal and state constitutions. See Jones v. State, 92 So.2d 261 (Fla. 1957) (trial court's statement to jury which implied that a hold-out juror would be a stubborn mule or jackass held to constitute reversible error because it served to impede juror's exercise of free and independent judgment); Bell (court's statement that all six jurors had to agree served to impede juror's exercise of free and independent judgment in violation of article I, section 16, Constitution of the State of Florida, requiring verdict of the jury be impartial). For the foregoing reasons, we reverse the conviction and sentence entered thereon and remand for a new trial.
Rodriguez also argues that the trial court erred by failing to suppress certain physical evidence. We conclude that the trial court correctly denied the motion to suppress. State v. M.N.M., 423 So.2d 987 (Fla. 3d DCA 1982); Dinkins v. State, 244 So.2d 148 (Fla. 4th DCA 1971).
Reversed and remanded for a new trial.
NOTES
[1] See Fla.Std. Jury Instr. (Crim.) 3.06.
[2] The record does not reflect whether (1) the jury advised the judge that it was deadlocked at the time the charge was given, (2) counsel was provided notice of the judge's intention to give the charge, or (3) counsel was given an opportunity to be heard concerning the need for and the contents of the charge. See Rose v. State, 425 So.2d 521, 525 (Fla. 1982) (Overton, J., concurring in part, dissenting in part), cert. denied, 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983).
[3] The nature of the deadlock instruction at issue in Sayan cannot be determined from a reading of the opinion in that case.
[4] The cases discussing this issue can be divided into three groups: (1) cases in which the error of a coercive charge was preserved by objection, see, e.g., Nelson v. State, 438 So.2d 1060 (Fla. 4th DCA 1983); Lee v. State, 239 So.2d 136 (Fla. 1st DCA), cert. denied, 240 So.2d 642 (Fla. 1970); (2) cases in which it cannot be determined whether the defendant objected to the charge, see, e.g., Jones v. State, 92 So.2d 261 (Fla. 1957); Kozakoff v. State, 323 So.2d 28 (Fla. 4th DCA 1975), cert. denied, 336 So.2d 1184 (Fla. 1976); Bell v. State, 311 So.2d 179 (Fla. 1st DCA 1975); and (3) cases in which the charge was found not to be coercive, see, e.g., State v. Bryan, 290 So.2d 482 (Fla. 1974); Gardner v. State, 405 So.2d 470 (Fla. 3d DCA 1981).