498 So.2d 472 (1986)
Edward WARREN, Appellant,
v.
The STATE of Florida, Appellee.
No. 84-1655.
District Court of Appeal of Florida, Third District.
September 9, 1986.
*473 Bennett H. Brummer, Public Defender, and Marti Rothenberg, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Michael J. Neimand, Asst. Atty. Gen., for appellee.
Before HENDRY, HUBBART and NESBITT, JJ.
HUBBART, Judge.
This is an appeal by the defendant from judgments of conviction and sentences entered below after an adverse jury verdict in a criminal case. The dispositive question presented for review is whether the trial court committed fundamental error in giving an "Allen" charge to the jury which deviated from the standard criminal jury instruction on a deadlocked jury [Fla.Std. Jury Instr. (Crim.) 3.06]. Based on the circumstances of this case, we conclude that fundamental error is presented and reverse for a new trial.

I
The facts relevant to the above issue are entirely undisputed. On March 20, 1984, the defendant Edward Warren and a co-defendant Richard Sherry  not a party to this appeal  were jointly charged by information with one count of armed burglary and two counts of armed robbery. Both defendants entered a plea of not guilty and on June 20-21, 1985, were tried by a jury in the Circuit Court for the Eleventh Judicial Circuit of Florida.
On the morning of June 21, 1985, counsel for both parties presented a closing argument to the jury, the trial court instructed the jury on the law, and at 11:38 A.M. the jury retired to consider its verdict. At 3:23 P.M., the jury sent out a note[1] that they had reached a verdict as to one of the defendants but were "hopelessly deadlocked" as to the second defendant. The jury then returned to the courtroom; the trial court told the jury that it would take a verdict on the one defendant agreed upon, but that the jury would have to continue deliberations on the second defendant. The jury, however, had not filled out the appropriate verdict form, and, accordingly, no verdict was taken. At 3:25 P.M., the jury again retired and resumed its deliberations.
At 4:45 P.M., the jury sent out another note which read: "As stated before, we have a verdict on one defendant. However, we are totally unable to reach a verdict on the other. It's hopeless." The jury returned to the courtroom and the clerk published a guilty verdict on all counts charged as to the co-defendant Richard Sherry. Immediately after publishing the verdict, the trial court gave the modified "Allen" charge on jury deadlock as contained in Florida Standard Jury Instruction (Criminal) 3.06, adding at the end the following admonition not contained in the standard charge:
"Really don't want to try this case again. It costs a great deal of money to bring cases to trial and we have to try this and you heard all the testimony and evidence and the court sincerely hopes that you will go back and deliberate and reach a *474 verdict if you can. If you can't, so be it."
At 4:51 P.M., the jury again retired and resumed its deliberations.
At 5:50 P.M., the jury sent out another note which read: "We are miles apart, and there's no possibility of our reaching a verdict. Please excuse us." Crossed out of the note and in a different handwriting was the statement: "We are all not in agreement with this." The trial court, at that point, stated that it was inclined to send the jury home and have them return the following morning for further deliberations. Defense counsel stated that he would like to give the jury a little more time and the trial court agreed. The jury then returned to the courtroom, and the trial court, without making any reference to the jury's note, stated, "let's have a little chat." Inquiry was then made about possible points of confusion on the law, and later, after some colloquy, the forewoman wrote out a question concerning lesser included offenses which the trial court answered. After the forewoman stated she had other questions, the trial court, with consent of the forewoman, charged the jury with the complete set of jury instructions. At 6:27 P.M., the jury retired to resume its deliberations.
At 7:13 P.M., the trial court resolved to send the jury home for the night. The jury was returned to the courtroom and the trial court inquired of the forewoman, "How goes it?" The forewoman replied, "Terrible." The trial court then stated that it was going to declare an overnight recess and start again in the morning. The forewoman stated, "I really don't think we are able to come close." The trial court replied, "Try." The forewoman then asked for ten more minutes of deliberations, which the trial court acceded to. At 7:15 P.M., the jury retired to resume its deliberations.
At 7:25 P.M., the jury sent back a note signed by the forewoman and two other jurors which stated:
"We tried yet another time. I believe another jury will stand a better chance at arriving at a verdict. Please understand: we really tried. More time will not ensure a satisfactory outcome for us."
The trial court again reconvened in the presence of the jury, read the above note, and stated that there were three signatures to the note "which leaves me to believe that it's a three to three something." The trial court then stated:
"I want you to sleep on it and I want you to report back tomorrow morning at 8:30 in the morning.
During the course of the overnight recess  file the note please  do not discuss this matter with anyone. Your family is certainly going to want to know what's going on. Tell them just be patient, you will fill them in when it's all over with, which will be eventually.
The jury was then excused and separated for an overnight recess.
The next morning on June 22, 1985, at 8:30 A.M., the jury reported to the courtroom. The trial court then addressed the jury as follows:
"Folks, I really just want to acknowledge that you are all here and hope that it will be a productive day. Try to resolve your differences, if you possibly can.
Okay. Go get `em."
The jury then retired and resumed its deliberations.
At 9:35 A.M.  one hour later  the jury returned a verdict in this case in which it found the defendant Edward Warren guilty of trespass without a firearm as a lesser included offense of burglary, and guilty of two counts of robbery without a firearm. No objection was ever voiced to any of the court's instructions, comments or rulings made during the aforesaid proceedings. The defendant Warren was subsequently sentenced to time served on the trespass conviction and two concurrent twelve-year sentences on the robbery convictions. This appeal follows.

II
It is well-settled in this state that the trial court in a criminal case may, in appropriate *475 circumstances, give a so-called "Allen" charge to the jury in the event the jury becomes deadlocked. This charge is derived from the case of Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), and is designed to bring a deadlocked jury together, if possible, so that a unanimous verdict may be rendered without any juror giving up his or her conscientious convictions. The charge has no particular canonical form and has appeared in many variations in American jurisdictions since its initial appearance in 1896. See generally Annot., 97 A.L.R.3d 96 (1980).
The Florida Supreme Court first approved a charge of this nature in State v. Bryan, 290 So.2d 482 (Fla. 1974). In that case, the Court stated that the "Allen" charge employed below "did not differ materially from the approved condensed charge found in Standard Jury Instruction 2.19." Id. at 483. The aforesaid standard charge, which has since been modified, reads as follows:
"It is your duty to agree on a verdict if you can do so without violating conscientiously held convictions that are based on the evidence or lack of evidence. No juror from pride of opinion hastily formed or expressed, should refuse to agree. Yet, no juror, simply for the purpose of terminating the case, should acquiesce in a conclusion that is contrary to his own conscientiously held view of the evidence. You should listen to each other's views, talk over your differences of opinion in a spirit of fairness and candor and, if possible, resolve your differences and come to a common conclusion, so that a verdict may be reached and this case may be disposed of."
Fla.Std.Jury Instr. (Crim.) 2.19 (1970). The charge employed by the trial court in Bryan contained the following additional admonition:
"If, however, the majority of your number are for a conviction, a dissenting juror should consider whether his doubt is reasonable when it has made no impression upon the minds of other jurors, equally honest and equally intelligent. If, on the other hand, the majority of the jury is for an acquittal, a minority should ask themselves whether they might not reasonably doubt the correctness of their judgment, which is not shared by the majority of their fellow jurors."
290 So.2d at 483 n. 1. The Court concluded that although it was "preferable" to use the standard instruction, rather than the version used above, and that
"Standard 2.19 should be used in such cases as are appropriate henceforth, the charge given in the instant case was not erroneous. It was a balanced charge, urging neither acquittal nor conviction. The trial judge specifically stated that no juror was to abandon his conscientious convictions."
290 So.2d at 484. The Court then proceeded to approve "Allen" charges generally, id., thereby removing a cloud which had been placed over such charges by the First District in Lee v. State, 239 So.2d 136, 139 (Fla. 1st DCA), cert. denied, 240 So.2d 642 (Fla. 1970). The Court's approval of the standard charge for future cases, however, as opposed to the actual charge given in Bryan, supports the accuracy of Judge Glickstein's subsequent observation that "Florida's current standard deadlock charge avoids the pitfalls of the traditional Allen charge, which tended to convey to the minority on a jury that they should accede to the will of the majority." Nelson v. State, 438 So.2d 1060, 1062 (Fla. 4th DCA 1983).
Heeding the Supreme Court's admonition that only the standard charge 2.19 should be used in the future, Florida courts subsequent to Bryan have consistently upheld the use of the above standard charge and have affirmed criminal convictions in which the said charge has been given. See, e.g., Rose v. State, 425 So.2d 521 (Fla. 1982), cert. denied, 461 U.S. 909, 103 S.Ct. 1883, 86 L.Ed.2d 706 (1983); Spaziano v. State, 393 So.2d 1119 (Fla. 1981), aff'd, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); Gardner v. State, 405 So.2d 470 (Fla. 3d DCA 1981); Peak v. State, 363 So.2d 1166 *476 (Fla. 3d DCA 1978), cert. denied, 373 So.2d 460 (Fla.), cert. denied, 444 U.S. 970, 100 S.Ct. 642, 62 L.Ed.2d 384 (1979). As previously indicated, however, this standard charge has since been modified and now reads:
"I know that all of you have worked hard to try to find a verdict in this case. It apparently has been impossible for you so far. Sometimes an early vote before discussion can make it hard to reach an agreement about the case later. The vote, not the discussion, might make it hard to see all sides of the case.
We are all aware that it is legally permissible for a jury to disagree. There are two things a jury can lawfully do: agree on a verdict or disagree on what the facts of the case may truly be.
There is nothing to disagree about on the law. The law is as I told you. If you have any disagreements about the law, I should clear them for you now. That should be my problem, not yours.
If you disagree over what you believe the evidence showed, then only you can resolve that conflict, if it is to be resolved.
I have only one request of you. By law, I cannot demand this of you, but I want you to go back into the jury room. Then, taking turns, tell each of the other jurors about any weakness of your own position. You should not interrupt each other or comment on each other's views until each of you has had a chance to talk. After you have done that, if you simply cannot reach a verdict, then return to the courtroom and I will declare this case mistried, and will discharge you with my sincere appreciation for your services."
Fla.Std. Jury Instr. (Crim.) 3.06 (1981). As can be seen, this charge is substantially similar to the predecessor standard charge 2.19, stated above.
It is therefore clear from the above cases that it is proper for a trial court in a criminal case to give the standard "Allen" charge when the jury appears to be deadlocked. It is equally clear, based on a line of district court decisions decided subsequent to Bryan, that reversible error may appear where the trial court deviates from the standard charge and gives improper admonitions which, among other things, make it clear that the jury must reach a verdict in the cause. It has been held reversible error for a trial court to explicitly state that the court desires a verdict in the cause, Kozakoff v. State, 323 So.2d 28 (Fla. 4th DCA 1975) (given during voir dire of jury), cert. denied, 336 So.2d 1184 (Fla. 1976), or to infer indirectly that the trial court desires a verdict in the case, Nelson v. State, 438 So.2d 1060 (before and after giving standard charge 3.06), or to answer a juror's question in the affirmative as to whether "all six [jurors] have to agree," Bell v. State, 311 So.2d 179, 180 (Fla. 1st DCA 1975) (after giving standard charge 2.19), or to inform the jury concerning the cost of retrying the case and to state that the trial court desires a verdict in the case, Rodriguez v. State, 462 So.2d 1175 (Fla. 3d DCA) (lengthy deviation; no standard charge given), pet. for review denied, 471 So.2d 44 (Fla. 1985), or to note that a single juror does not concur with the verdict as indicated during a jury poll, Lewis v. State, 369 So.2d 667 (Fla. 2d DCA 1979) (improvised charge given after jury poll indicated one juror dissenting). In a pre-Bryan case, the Florida Supreme Court has similarly held that it was reversible error for a trial court to ridicule, in the abstract, any holdout, dissenting juror as one meriting a bale of hay for lunch. Jones v. State, 92 So.2d 261 (Fla. 1957). In another pre-Bryan case, it was also held to be reversible error for the trial court to precede an "Allen" charge by vaguely indicating that the jury would be taken as a group to a hotel if they failed to reach a verdict. Lee v. State, 239 So.2d 136. On the other hand, it has been held proper for a trial court to add, at the end of a standard "Allen" charge, that, if after an additional vote the jury appears to be deadlocked, the jury should notify the court. Evans v. State, 303 So.2d 68 (Fla. 3d DCA 1974).
*477 Running through this line of cases is the court's concern that no juror should ever be pressured by an "Allen" charge to give up his or her conscientious convictions simply for the sake of arriving at a verdict. As Judge Glickstein has explained:
"It is the genius of our jury system that twelve impartial persons, individually, applying a subjective standard, come to a common conclusion of defendant's guilt beyond a reasonable doubt. This fundamental principle becomes subverted if a jury member is pressured to defer to the opinion of his peers, for unanimity is made a sham thereby. An objective standard is in effect substituted for the subjective, by virtue of the implication that the majority opinion is reasonable, and the minority, unreasonable.
Here the trial court may have led one or more jurors to capitulate, against his or her conscientious judgment, because the court made it appear that unless a verdict was reached great waste would occur and the court's confidence in the jury's common sense would somehow have been betrayed."
Nelson v. State, 438 So.2d at 1062-63, quoted with approval in Rodriguez v. State, 462 So.2d at 1178. Stated differently, "[n]othing should be said by the trial court to the jury that would or could likely influence the decision of a single juror to abandon his conscientious belief as to the correctness of his position." Lee v. State, 239 So.2d at 139. Generally speaking, an objection is required in these cases in order to preserve for appellate review the propriety of a trial court's "Allen" charge, see, e.g., Tejeda-Bermudez v. State, 427 So.2d 1096 (Fla. 3d DCA 1983); Sayan v. State, 381 So.2d 363 (Fla. 4th DCA 1980); Armstrong v. State, 364 So.2d 1238 (Fla. 1st DCA 1977), cert. denied, 373 So.2d 456 (Fla. 1979), although in some of the cases which have reversed convictions, there is no mention of a proper objection to the "Allen" charge in the court's opinion. See Rodriguez v. State, 462 So.2d at 1177 n. 4. Where, however, the error complained of is particularly egregious, fundamental error has been found, even in the absence of a proper objection. Rodriguez v. State, 462 So.2d 1175.

III
Turning now to the instant case, we have no difficulty in concluding that the trial court committed fundamental error in deviating from the standard charge on a deadlocked jury under the circumstances of this case. After reading Standard Jury Instruction (Criminal) 3.09, the trial judge added some additional comments which made it clear that she did not wish to try this case again, that it would cost a great deal of money to retry the case, and that she sincerely hoped that the jury could return a verdict if at all possible. Subsequently, after the jury sent back two notes stating that the jurors were hopelessly deadlocked, the trial court declined to accept this result, and eventually sent the jury home for an overnight recess after nearly eight hours of deliberation.[2] Prior thereto, during a colloquy with the jury in open court, the forewoman of the jury stated that "I really don't think we are able to come close," and the trial judge replied, "Try," indicating that the judge wanted a verdict. When the jury returned the next morning, the trial judge again made it plain that she wanted a verdict in the cause, stating "I ... hope that it will be a productive day. Try to resolve your differences, if you possibly can. Okay. Go get `em."
Based on the totality of the circumstances present here, we believe the trial court's deviations from the standard jury charge on a deadlocked jury went to the very foundations of this case such as to constitute a fundamental error. This is so because the comments complained of infected the very integrity of the fact-finding process in that the trial judge (a) stated, over and again, that she wanted a verdict in the cause, and (b) emphasized the needless cost *478 involved in retrying the case in the event of a hung jury  both of which are strictly forbidden comments in an "Allen" charge under Florida law. By so doing, we believe the trial court may have unwittingly led one or more jurors to capitulate against his or her conscientious judgment and to return a unanimous verdict in the cause as the trial court desired. We conclude that fundamental error is thereby presented under these circumstances. See Rodriguez v. State, 462 So.2d 1175.
The judgments of conviction under review are reversed and the cause is remanded to the trial court for a new trial.
Reversed and remanded.
NOTES
[1] At 2:04 P.M., the jury had sent out a prior note with two questions concerning lesser included offenses and vicarious possession of a firearm. After consulting with counsel for both parties, the trial court answered the note at 2:15 P.M.
[2] The defendant urges that the overnight recess constitutes a reversible error in this case. See Livingston v. State, 458 So.2d 235 (Fla. 1984). In view of the result we reach, it is unnecessary for us to address this issue.