RAMIREZ, J.
 

 Anthony Nottage appeals his judgment of conviction and sentence on the grounds that the trial court erred because, after it gave an Allen
 
 [1]
 
 charge following a note that the jury was deadlocked, it failed to declare a mistrial. We conclude that,
 
 *47
 
 based on the totality of the circumstances, the trial court did not coerce the jury to return a verdict.
 

 I. Factual Background
 

 The State of Florida charged Nottage with numerous crimes, including attempted first-degree felony murder, kidnapping, three counts of sexual battery, attempted sexual battery, aggravated battery, burglary, child abuse, and grand theft of a motor vehicle. The jury began deliberations at 6:25 p.m. on a Friday. At the start of deliberations, the trial court informed the jury that it would “probably call it a night” at approximately 7:30 p.m. and have the jury return the following Monday, if the jury had not arrived at a verdict by that time.
 

 During deliberations, the jury sent a note in which the jurors asked if alternate jurors could join in the deliberations “for more opinions.” At 7:30 p.m., the trial court sent the jury a note stating that “only six of you can decide the case. We are going to recess for the evening.” The trial court thereafter dismissed the jury for the evening.
 

 Deliberations continued the following Monday at 9:30 a.m. At that point, the trial court advised counsel that, after the jurors were sent home on Friday night, one of the jurors remained behind and expressed concerns for her safety because she lived and worked in the same community as some of the individuals connected to the case. The defense moved for a mistrial. The trial court conducted an inquiry of the juror, and the juror assured the trial court that she could continue with her deliberations. The trial court denied the motion for mistrial.
 

 At approximately 11:00 a.m. that same day, the jurors resumed deliberations. Soon thereafter, the jurors sent a note that read as follows:
 

 First degree: Four yes; maybe, one; no, one.
 

 Kidnapping: Four, yes; no, two.
 

 Sexual battery: Yes, five; no, one. Aggravated battery: Yes, four; maybe, two.
 

 Burglary, trespassing: Yes, five; no, one.
 

 The
 
 Allen
 
 charge is contained in Florida Standard Jury Instruction (Criminal) 3.06, which reads as follows:
 

 I have only one request of you. By law I cannot demand this of you, but I want you to go back into the jury room, then, taking your turns, tell each of the other jurors about any weaknesses of your own positions. You shall not interrupt each other’s comments or each other’s views until each of you have had a chance to talk.
 

 After you have done that, if you simply cannot reach a verdict, then return to the courtroom and I will declare this case mistried, and will discharge you with my sincere appreciation for your services. You may now retire to continue with your deliberations. Thank you, Ladies and Gentlemen.
 

 After reading these instructions, the jury resumed deliberations at approximately 4:00 p.m.
 

 Around 4:55 p.m., the jury sent another note that read as follows: “[W]e are still five to one, all the way down.” Because the judge had failed to admonish the jury not to disclose the numerical results of their votes during deliberations as instructed in the Thomas
 
 [2]
 
 case, it now became clear that there was a lone holdout in the jury room. The trial court dismissed the jurors for the evening.
 

 
 *48
 
 The proceedings resumed
 
 the
 
 following day at approximately 10:00 a.m. The trial court then advised counsel that one of the jurors previously had asked the bailiff for a private conversation with the judge, which the trial court did not permit.
 

 Defense counsel moved for a mistrial based upon the note in which the jury indicated that there was a vote of five to one and the exchange that occurred between the juror who requested a private conversation with the judge. The trial court denied the motion and ordered the jury at approximately 10:50 a.m. to continue with deliberations.
 

 A short time thereafter, the trial court received the following note from the jury:
 

 [Juror’s name] would like to be removed from this trial. It is causing me a great deal of stress, because I cannot come to a decision on this matter. I thought I could be fan- and impartial, but I am trying very much so, but, sir, could you please excuse me?
 

 The trial court summoned the attorneys to the courtroom. About ten minutes elapsed before all the lawyers returned to the courtroom. At that point, the jury sent out the completed verdict forms, finding Not-tage guilty as charged on all counts. Defense counsel again moved for a mistrial, arguing that the jury had been deadlocked after the jury sent the note that followed three days of deliberations. The trial court denied the motion.
 

 II. Analysis
 

 The United States Supreme Court set forth in
 
 Allen v. United States,
 
 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), what has come to be known as the
 
 Allen
 
 charge and thereby approved an instruction given when it appears that the jury encounters difficulty in reaching a verdict. The applicable standard of review here is whether, under the totality of circumstances, the
 
 trial
 
 court’s actions were coercive.
 
 See Thomas v. State,
 
 748 So.2d 970, 976 (Fla.1999);
 
 Nelson v. State,
 
 438 So.2d 1060 (Fla. 4th DCA 1983). A trial court commits error when it couches an instruction to a jury or otherwise acts in any way that would appear to coerce any juror to reach a hasty decision or to abandon a conscientious belief in order to achieve a unanimous position.
 
 Thomas,
 
 748 So.2d at 976.
 

 Nottage argues that a new trial is warranted in reliance upon numerous cases that have reversed guilty verdicts where the jury returned verdicts after the trial court ordered the jury to continue deliberations following an
 
 Allen
 
 charge and a subsequent jury deadlock. For example, in
 
 Warren v. State,
 
 498 So.2d 472 (Fla. 3d DCA 1986), we stated “that no juror should ever be pressured by an
 
 ‘Allen’
 
 charge to give up his or her conscientious convictions simply for the sake of arriving at a verdict.”
 
 Id.
 
 at 477.
 

 In
 
 Tomlinson v. State,
 
 584 So.2d 43 (Fla. 4th DCA 1991), the judge was confronted with a similar situation as in this case. After announcing a deadlock, the judge gave the
 
 Allen
 
 charge, but the jury could still not reach a unanimous verdict. Instead of declaring a mistrial, the judge sent the jury home, with the following instruction:
 

 I have your last note here, ‘The poll of the jury indicated that reading parts of the testimony would not affect our inability to reach a unanimous decision.’ I might add parenthetically, put a comma there, and say ‘at this time.’ It’s not unusual after a trial of this kind to have juries deliberate one, two, three, four, five, six, seven days. It’s not unusual. I know you’re discouraged that you haven’t reached a verdict yet, but I know there are still avenues for discussion and for resolving any differences that may
 
 *49
 
 be prevalent among some jurors. And with this in mind, with the permission of both sides, I’m going to recess the trial tonight.
 

 ... Personally, what I do when I have a problem is say a prayer for guidance. That may be an absolute last resort, because you still have to follow the law in this case, but it may help you resolve some conflict in your own minds.
 

 Id.
 
 at 44. The jury was to resume deliberations on the following day. ' The Fourth District held that it was fundamental error for the trial court to send the jury back for deliberations after it announced a second deadlock, with what was basically a second
 
 Allen
 
 charge.
 
 Id.
 
 at 45. In our case, after giving the
 
 Allen
 
 charge, the trial judge did not instruct the jury any further, but simply sent it home.
 

 In
 
 Rubi v.
 
 State, 952 So.2d 630 (Fla. 4th DCA 2007), the Fourth District Court of Appeal again held that the trial court committed fundamental error where the clear implication of the jury’s second note, after the
 
 Allen
 
 charge, was that the jury was unable to reach a unanimous decision. The judge then reinstructed the jury as follows:
 

 Ladies and Gentlemen, the question I have is as follows: “One of our jurors is assuming and speculating on the evidence. Based upon his responses he is not following the law. The facts of the case is being said to not be factual and/or not conceivable.” Signed again by the foreperson.
 

 Ladies and Gentlemen, pursuant to the instructions I previously gave you, both orally and verbally, I’m going to repeat one of those instructions. It’s under 3.10, Rules For Deliberations, Subsection 1.
 

 You must follow the law as it is set out in these instnactions. If you fail to follow the law, your verdict will be a miscarriage of justice. There is no reason for failing to follow the law in this case. All of us are depending upon you to make a wise and legal decision in this matter.
 

 Thank you very much, Ladies and Gentlemen, you may reconvene for your deliberations. Thank you.
 

 Id.
 
 at 633. A few minutes after receiving this instruction, the jury returned a verdict, of guilty.
 
 See Washington v. State,
 
 758 So.2d 1148, 1154 (Fla. 4th DCA 2000) (stating that “[ojnce the
 
 Allen
 
 charge is given, flexibility is lost and the trial crosses the river of no return ... [I]t is per se reversible error to repeat a deadlock jury instruction and send a jury back for further deliberations after it has announced a second deadlock”).
 

 No other district court has adopted a per se rule mandating a mistrial after the jury is still deadlocked after an
 
 Allen
 
 charge. This Court, in
 
 Warren,
 
 498 So.2d at 472, employs a more flexible standard to conclude that the trial court committed fundamental error. We explained as follows:
 

 After reading Standard Jury Instruction (Criminal) 3.09, the trial judge added some additional comments which made it clear that she did not wish to try this case again, that it would cost a great deal of money to retry the case, and that she sincerely hoped that the jury could return a verdict if at all possible. Subsequently, after the jury sent back two notes stating that the jurors were hopelessly deadlocked, the trial court declined to accept this result, and eventually sent the jury home for an overnight recess after nearly eight hours of deliberation.(FN2) Prior thereto, during a colloquy with the jury in open court, the forewoman of the jury stated that “I really don’t think we are able to come close,” and the trial judge replied, “Try,”
 
 *50
 
 indicating that the judge wanted a verdict. When the jury returned the next morning, the trial judge again made it plain that she wanted a verdict in the cause, stating “I ... hope that it will be a productive day. Try to resolve your differences, if you possibly can. Okay. Go get 'em.”
 

 [ (FN2.) ] The defendant urges that the overnight recess constitutes a reversible error in this case. See
 
 Livingston v. State,
 
 458 So.2d 235 (Fla.1984). In view of the result we reach, it is unnecessary for us to address this issue.
 

 Based on the totality of the circumstances present here, we believe the trial court’s deviations from the standard jury charge on a deadlocked jury went to the very foundations of this case such as to constitute a fundamental error. This is so because the comments complained of infected the very integrity of the fact-finding process in that the trial judge (a) stated, over and again, that she wanted a verdict in the cause, and (b) emphasized the needless cost involved in retrying the case in the event of a hung jury — both of which are strictly forbidden comments in an “Allen” charge under Florida law. By so doing, we believe the trial court may have unwittingly led one or more jurors to capitulate against his or her conscientious judgment and to return a unanimous verdict in the cause as the trial court desired. We conclude that fundamental error is thereby presented under these circumstances.
 

 Id.
 
 at 477.
 

 Our case is significantly different in that the trial court only gave the standard
 
 Allen
 
 charge without editorializing. It did not express any opinion, or say anything further to the jury except declare a recess and send the jury home for the evening. Thus, we are urged again to declare that an overnight recess alone, after an
 
 Allen
 
 charge, constitutes reversible error, a rule we decline to adopt.
 
 See Warren,
 
 498 So.2d at 477 n. 2. We believe such a bright-line rule would be in conflict with
 
 Thomas,
 
 which stated that the standard of review was whether, under the totality of circumstances, the trial court’s actions were coercive.
 
 See Thomas,
 
 748 So.2d at 976.
 

 The circumstances in
 
 Rubi
 
 and
 
 Wairen
 
 evidently affected the holdout juror’s decision because the jury reached a verdict shortly after resuming deliberations immediately after the court’s last instruction. The totality of the circumstances in those cases, unlike the circumstances here, supported a finding of improper coercion of the jury.
 

 We have taken into account the jury’s unsolicited disclosure of its numerical divisions when it first reported it was deadlocked and the court gave the
 
 Allen
 
 charge. As the Florida Supreme Court stated in
 
 Thomas:
 

 Although this information was not requested by the judge, its disclosure was fraught with the danger that any further instruction to deliberate might be construed as pressure on the single “holdout” to give in. We have recently reiterated that the better practice is for the trial judge to admonish the jury at the outset of deliberations that they should not indicate how
 
 they
 
 stand during their deliberation.
 
 See Scoggins v. State,
 
 726 So.2d 762, 767 (Fla.1999). Further, a judge, consciously or subconsciously, may be influenced by the knowledge that there is a lone holdout to insist that the jury continue deliberating in order to reach a verdict. The apparent temptation is that the single holdout may give in at any time.
 

 Thomas,
 
 748 So.2d at 979. Similarly, in our case, the trial judge did not request the jury’s numerical division, but neither
 
 *51
 
 did he admonish the jury at the outset of deliberations not to disclose the voting results. Furthermore, when the jury reported its vote tally, the trial judge still did not admonish the jury. This disclosure “was fraught with the danger that any further instruction to deliberate might be construed as pressure on the single ‘holdout’ [juror] to give in.”
 
 Id.
 
 The better practice, as the Florida Supreme Court reiterated in
 
 Thomas,
 
 is “for the trial judge to admonish the jury at the outset of deliberations that they should not indicate how they stand during their deliberations.”
 
 Id.
 
 No such admonishment occurred here. Nevertheless, because the trial court gave no further instructions to the jury after the
 
 Allen
 
 charge or in any way coerce a verdict, we conclude that the totality of the circumstances surrounding the jury’s deliberations have not rendered the verdict unreliable.
 

 III. Conclusion
 

 We thus conclude that, under the totality of the circumstances here, the trial court did not commit reversible error recessing the trial until the following day after giving the
 
 Allen
 
 charge.
 

 Affirmed.
 

 [1]
 

 .
 
 Allen v. United States,
 
 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).
 

 [2]
 

 .
 
 Thomas v. State,
 
 748 So.2d 970 (Fla.1999).