UNITED STATES of America, Plaintiff-Appellee,

v.

Leon BLEVINAL, Defendant-Appellant.

No. 78–5712.

United States Court of Appeals, Fifth Circuit.

Dec. 5, 1979.

J. Roger Thompson, Frank J. Petrella, Atlanta, Ga., for defendant-appellant.

Edgar W. Ennis, Jr., Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before GODBOLD, RONEY and FRANK M. JOHNSON, Jr., Circuit Judges.

RONEY, Circuit Judge:

Defendant appeals his conviction on four firearms charges, arguing *first*, the district court gave what he regards as an impermissible *Allen*-type charge; *second*, the court erred in admitting three weapons into evidence; *third*, there was insufficient evidence to support the convictions; and *fourth*, there was no evidence upon which the jury could conclude that the weapons relating to the indictment met the statutory definition of "firearm." Finding no error, we affirm.

Defendant and two others formulated a plan to purchase firearms for resale. Two lots of handguns were successfully bought and resold, but while negotiating for the sale of a third lot, defendants suspected that federal agents were investigating their activities. In order to ascertain whether they were in fact under surveillance, defendant and the others conducted a dummy delivery run. Their suspicions were borne out. Federal agents stopped the motor home in which defendant and his accomplices were riding, in order to search it for guns. Instead of illegal firearms, agents recovered only owner's manuals for Colt AR–15 rifles and High-Standard shotguns from defendant's suitcase. Defendant and the others were released.

Defendant was subsequently found in possession of 25 pistols. Along with the handguns, agents recovered an AR–15 rifle and two High-Standard shotguns, the kind depicted in the owner's manuals previously seized from defendant.

Defendant was convicted under a four-count indictment charging conspiracy to violate the federal firearms acts, 18 U.S.C.A. §§ 371, 922(a)(1), 922(b)(3), 922(b)(5), 922(m), 923(a), 924, engaging in the business of selling firearms without a license, 18 U.S.C.A. §§ 923, 924, exporting arms without proper registration, 22 U.S.C.A. § 1934, and engaging in business as a firearms dealer without having paid a licensing fee, 18 U.S.C.A. §§ 923(a), 924. The charges all related to handguns. No charges were

brought in connection with the rifle and shotguns seized from defendant.

### So-Called *Allen* charge

■ When the jury was initially convened, the trial court informed the members that they would sit each day "to about a quarter after five or five thirty, something like that." On the third day of trial the jury was charged, and at approximately 2:00 p. m., deliberations began. At approximately 5:55 p. m., no verdict having been returned, but without any indication that the jury was experiencing difficulties, the court returned the jury to the courtroom. Following is the statement the court then made to the jury, with the words about which defendant complains on appeal in italics.

THE COURT: Now, members of the Jury, I know you have not yet reached a verdict in this case and as I told you on Monday morning about generally how we operate and so on but of course I didn't go into how we operate if we got into a situation like this where we did not have a verdict late in the day. So, I want to be sure you understand how we intend to operate. We, of course, have spent three days already on this case. *We have no intention of giving up on it. I want you to understand that. We have no intention of giving up on it.* So, what I intend to do is, it's now about five minutes to six or something like that. If you have not made a verdict by say six forty-five it would be my intention to let you go home and come back in the morning and resume your deliberations in the morning because *as I say we don't have any intention of giving up on the case. We intend to get a verdict.* So, what I suggest to you, that you do now is you go back to the Jury room and resume your deliberations and if you can reach a verdict by six forty-five that's fine. If you cannot then we will come back in the morning and resume the deliberations after you have had a night's rest.

I don't want you to feel that you are under any pressure at all to reach a verdict. I just simply wanted you to know

how we intended to operate. So, I suggest now that you go back to your Jury Room and resume your deliberations. We will follow that general course.

All right.

After retiring again, defendant's counsel objected to the court's instruction, "We have no intention of giving up on it," because it carried with it "a connotation that the Court means forever and ever." The court refused counsel's suggestion that the jury be further instructed that a mistrial would be granted if the jury members could not agree on a verdict without surrendering honestly held beliefs.

Without rendition of a verdict, the jury recessed about 45 minutes later. The next morning, after one and one-half hours of deliberations and without any additional instructions, a verdict of guilty on all four counts was returned.

■ The "*Allen* charge," *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), is a supplemental instruction designed to encourage jury unanimity, generally given when it appears that the jury may be having difficulty reaching a verdict. The Supreme Court has approved such supplemental instructions, as has this Court, sitting *en banc. United States v. Bailey,* 480 F.2d 518 (5th Cir. 1973). Considered in its entirety, so long as the charge does not unduly coerce the minority into surrendering its views for the purpose of rendering a verdict, or set a time limit for the deliberations, the charge may be approved. *United States v. Cheramie,* 520 F.2d 325, 329, 330 (5th Cir. 1975). Nonetheless, where given, the charge is subject to close scrutiny, since the potential for coercion is present in even the most mild supplemental instructions, considering jury members' zeal to get the job done.

■ Defendant argues first that the district court should not have returned the jury for supplemental instructions on its own motion, but should have waited for a suggestion from the jury itself, or from counsel, that the jury was experiencing dif-

ficulties. In the first place this Court has not required such a procedure. *See United States v. Scruggs*, 583 F.2d 238, 241 (5th Cir. 1978). In the second place, there was no indication that the jury was having difficulty. It had not been out an inordinate length of time. In the third place, we do not interpret the court's actions as concern for whether the jurors were having difficulty seeking a verdict, but rather as concern for the fact that the jury members were entitled to some guidance since they had not finished their work at the usual adjournment time. The court had initially told the jury that it would sit each day until five or five-thirty, and the jury was entitled to know by 5:55 p. m. what procedure would be followed as it continued its work. It does not appear that the court intended to do any more.

The coercion about which defendant complains is the district court's suggestions, "We have no intention of giving up on it." In considering whether any statement unduly coerced a jury into rendering a verdict, the court looks "to the language employed and that language's impact, under the circumstances, on the finders of facts." *United States v. Cheramie*, 520 F.2d at 329 n.3. If the "charge may be plausibly read as more coercive than the standard charge we must hold that the charge was incorrectly given." *United States v. Amaya*, 509 F.2d 8, 13 (5th Cir. 1975), *cert. denied sub nom. Flores-Amaya v. United States*, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977).

Defendant argues that by suggesting the court was unwilling to "give up" the case, the court negated the convention that a jury member has a duty not to surrender an honest belief of guilt or innocence, for the mere purpose of rendering a verdict. We interpret the language to communicate nothing more than that the jury could have as long as it needed to reach a verdict, and would not be cut short because of the lateness of the hour. Examination of the supplemental charge in its entirety reveals, however, that the trial judge did tell the jury, "I don't want you to feel that you are under any pressure at all to reach a verdict." Regardless of what the trial judge

may have meant by the statement, "We have no intention of giving up on it," he ameliorated whatever effect that statement may have had on the jury by relieving any pressure to reach a verdict that day.

The trial judge need not announce in so many words that a hung jury is a viable alternative, nor is it usual to do so in the ordinary course of a trial. Without some indication from the jury that there was disagreement, the court does not usually address that problem. The *Allen*-charge addresses the problem. The court's instructions did not give any indication that it thought there was disagreement, nor did they advise the jurors what to do in such event.

There are many times during the course of standard charges when language taken out of context could be construed as an instruction to reach a verdict. At no time during standard instructions is a jury instructed that it has an alternative to reaching a verdict. The verdict form given the jury does not contain a place for indicating such a result. It was unnecessary that the judge do so here, because he gave no indication that anyone should compromise his position. For all he knew at that time, not a single juror had yet arrived at a decision. Considering the totality of circumstances and the language used, the charge did not unduly coerce the jury. *United States v. Fossler*, 597 F.2d 478, 485 (5th Cir. 1979).

The following three points on appeal need no extended discussion.

### *Relevance of Manuals and Guns*

■ Over objection, the Government introduced into evidence both owner's manuals and the rifle and two shotguns found in defendant's possession. Defendant explained that he had planned to show the manuals to some friends in Canada, where the guns they depicted were unavailable. The Government agreed, and the jury was instructed, that possession of the manuals, or the rifle and shotgun themselves, was not illegal.

■ Defendant, describing the weapons as "personal," argues the evidence should have been excluded since under Fed.R.Evid. 403, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. Absent an abuse of discretion by the trial court, evidentiary rulings of this sort will not be disturbed on appeal. *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979). The defendant has not convinced us that such abuse of discretion occurred here.

### Sufficiency of Evidence

■ Direct evidence from a co-conspirator was used by the Government, and was corroborated by additional evidence. The jury was properly instructed on assessment of the co-conspirator's testimony. Considering the evidence in a light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), it was sufficient to support a jury verdict of guilt.

### Were Handguns Firearms?

■ Finally, defendant argues that no evidence was introduced to show the handguns, which were the subject of the indictment, fit the statutory definition of firearm.

The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; . . .

18 U.S.C.A. § 921(a)(3). The various substantive charges all involved the improper transportation and sale of firearms. The jury was correctly charged that the Government bore the duty of proving each element of its case beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The jury in the present case was allowed to examine .38 calibre revolvers and .380 calibre automatic handguns described in the indictment. The jury was thus able to determine their completeness and could properly conclude, without the help of expert testimony, that the weapons were indeed "firearms" under the statutory definition.

AFFIRMED.

GODBOLD, Circuit Judge, dissenting:

I would reverse because of the verdict-inducing instructions to the jury.

The majority analyze the instructions in terms of the *Allen* charge cases, which are concerned with whether the instruction coerces a minority on the jury from surrendering their views for the purpose of reaching a verdict, and with an evident lack of enthusiasm conclude that what the district judge said here gets by.

This case does not belong in the *Allen* mold. The instructions that the court intended that there be a verdict in the case, and that the jury was bound to return a verdict, were much more pointedly and directly verdict-inducing than exhortations to jurors that they re-examine their views. The *Allen* charge is but one narrow and particularized example of a much broader genre of instructions. Here the risk of improper inducement of a verdict is sufficiently high that this defendant is entitled to have his case considered by a jury untainted by arm twisting.

The majority consider the remarks about not giving up on the case. They do not even comment upon what is to me the most objectionable language: "We intend to get a verdict."

Interpreting the "not giving up" language as communicating nothing more than that the jury could have as long as it needed to reach a verdict and would not be cut short because of the lateness of the hour, is a possible construction although it seems to me a strained one. But certainly it is not a necessary construction. The majority suggest also that the "not giving up" language was ameliorated by a supplemental charge that "reliev[ed] any pressure to reach a verdict that day." The verdict-inducing remarks were not limited to that day. So far as we know, the jurors, when they resumed deliberations the next morning, still considered as binding upon them the statement of the court that it intended that there be a verdict in the case.

Defense counsel is not an unbiased observer but he can, and did, listen and react. It is not without significance that he rose up at once and asked for a supplemental instruction covering the right of jury members to not agree on a verdict. In short, what the majority find did not have impact on the mind of the jurors had immediate impact on the mind of defense counsel. The supplemental instruction should have been given. It was not. The conviction should be reversed.