567 So.2d 456 (1990)
Michael Paul GAHLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 89-980.
District Court of Appeal of Florida, First District.
August 30, 1990.
Rehearing Denied September 27, 1990.
*457 Michael E. Allen, Public Defender, and Kathleen Stover, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Carolyn J. Mosley, Asst. Atty. Gen., Tallahassee, for appellee.
JOANOS, Judge.
Appellant Michael Paul Gahley appeals his conviction after a jury found him guilty of unarmed robbery. The issues presented concern (1) the denial of a requested jury instruction on the defense of duress, (2) a modified Allen jury instruction, and (3) a scrivener's error in the written judgment and sentence. We affirm with regard to issues one and two, and reverse as to issue three.
Appellant was sixteen years old when the offense at issue was committed. On August 22, 1988, appellant was charged with robbery while in possession of a firearm, contrary to sections 812.13 and 775.087(2), Florida Statutes. Pursuant to an order issued September 21, 1988, he was prosecuted as an adult.
The evidence at trial established that the robbery occurred at 9:00 p.m. in the parking lot of a Gainesville apartment complex. The victim, a resident of the apartment complex, observed no other persons in the area when he parked his car underneath a light. However, as he stepped out of his car, he saw a black male and a white male walking toward him. The black male asked the victim for a light, and then pulled a gun and assumed a crouching stance, aiming the gun at the victim. The victim testified that appellant, the white male in this scenario, stood diagonally behind the black male. The victim hesitated briefly when the black male ordered him to "give it up," whereupon the black male struck the victim twice in the face. As the victim fell to the ground, the black male ordered appellant to get his [the victim's] wallet. Appellant grabbed the wallet, then he and the black male ran past a building and climbed over the fence which encircled the complex.
Over objection, the victim testified that he observed nothing that led him to believe that appellant was being forced or coerced to take part in the robbery, or that appellant was surprised by the events which transpired. According to the victim, the black male seemed very nervous, "compared to the white guy."
The investigator who took appellant's statement testified that appellant told him he went to the apartment complex with a black male named Maurice, ostensibly to visit Maurice's girl friend. Appellant told the investigator that he did not know Maurice was going to commit a robbery, but he did know Maurice had a gun.[1] Appellant said nothing to the investigator about being forced or threatened by Maurice to participate in the robbery. Under appellant's version of the events, he accompanied Maurice to the apartment complex to visit some girls. As they walked, Maurice took cocaine hits from a ring on his finger, then began "to sweat a lot, like he was hyped up or something." Appellant said that he was stunned and intimidated when Maurice pulled the gun, and when he struck the victim. Appellant further testified that he had not seen the gun before Maurice aimed it at the victim, and that he had not discussed a gun or a robbery with Maurice. In appellant's account, Maurice said, "Give it up, Cracker," before striking the victim, and he grabbed the victim's wallet from appellant's hand as they ran around the building and toward the fence.
*458 During cross examination, appellant again denied knowing that Maurice had a gun the day of the robbery. Over objection, the prosecutor was permitted to ask appellant about a telephone call he made to the victim. Appellant explained that he called the victim from the jail to apologize, expressly denying that he called the victim in an effort to get his bail reduced.
On rebuttal, the victim testified that he believed the primary reason appellant called was to enlist his aid in obtaining a reduction in bail. According to the victim, appellant apologized, saying he did not know Maurice was going to hit him with the gun. In addition, the victim testified appellant did not deny knowing that Maurice intended to rob him, and did not say that he was frightened of Maurice in any way. As to appellant's knowledge of the presence of the gun, the victim testified thusly:
I talked to him for about ten minutes and he did describe or talk to me about the incident and about how they picked the gun up on the way over, that they were waiting around in the apartment complex.
Q. He told you that they picked the gun up on the way over?
A. Yes.
Q. Did he tell you where it came from.
A. No, he didn't tell me the person's name. He did tell me the name of the black person. He said it was Maurice, a school-time friend of his, that they grew up together and he knew him by street names. I said, "Maurice? What's his last name?" He said, "I just know him by Maurice. That's his street name."
During the jury instruction colloquy, defense counsel requested the following special instruction on duress:
Any act which would otherwise constitute a crime may be excused on the grounds that it was done under compulsion or duress that was present, imminent, and impending and of a nature to induce a well-grounded apprehension of death or serious bodily harm if the act is not done. Koontz v. State, 204 So.2d 224.
The trial court denied the request for a special instruction, observing the matter could be argued to the jury as dealing with the defendant's intent.
The jury retired at 2:45 p.m. to consider its verdict. At 3:24 p.m., the jury returned to the courtroom, having presented the following question to the court: "Did the inspector testify that Michael told him that Maurice & Michael picked up the gun from Maurice's cousin in the afternoon prior to the robbery?" The trial judge explained that the court could not make any comments about factual issues in evidence, and asked the jurors to return to the jury room and continue their deliberations. At 5:35 p.m., the jurors were returned to the court-room, where the trial court inquired as to their progress. Upon being advised that there were a couple of questions which the jurors considered important, the trial court stated:
... we're not here to comment on the evidence in the case. If you feel any additional amount of time certainly would assist you, of course, feel free to do so. If not, then you need to relate that to the court and the court will have to consider that and decide as to whether or not we need to proceed in the case. Let me read you one additional instruction which might assist you and then I'm going to ask that you go back and let me know within just a few minutes as to whether or not you feel that  after hearing this additional instruction, whether or not you feel you can fulfill your responsibility in this case. (Emphasis supplied.)
The trial court then gave the Florida standard jury deadlock instruction. Fla.Std. Jury Inst. (Crim.) 3.06. Twelve minutes after receiving the supplemental instruction, the jury returned a verdict of guilty of robbery with no aggravating circumstances.
At the outset, it is well settled that a defendant is entitled to have the jury instructed on the rules of law applicable to his theory of defense, if there is any evidence to support such defense. Hooper v. State, 476 So.2d 1253 (Fla. 1985), cert. denied, 475 U.S. 1098, 106 S.Ct. 1501, 89 *459 L.Ed.2d 901 (1986); Bryant v. State, 412 So.2d 347 (Fla. 1982); Steele v. State, 561 So.2d 638, 645 (Fla. 1st DCA 1990); Randolph v. State, 526 So.2d 931 (Fla. 1st DCA), review denied, 536 So.2d 245 (Fla. 1988).
Moreover, duress or coercion is a recognized defense to crimes other than homicide. Hall v. State, 136 Fla. 644, 187 So. 392 (1939); Corujo v. State, 424 So.2d 43, 44 (Fla.2d DCA), review denied, 434 So.2d 886 (Fla. 1983); Wright v. State, 402 So.2d 493, 498 (Fla.3d DCA 1981); Koontz v. State, 204 So.2d 224, 227 (Fla.2d DCA 1967). Entitlement to the duress defense requires a showing that at the time of the commission of the charged offense (1) the defendant was subjected to a real present danger, existent at the time, imminent and not to be avoided; or (2) under all the circumstances shown by the evidence, the defendant had reasonable grounds to believe that such danger was real, imminent and impending, and did so believe at the time the offense was committed. Wright, 402 So.2d at 497. One claiming the defense must show that the coercion was continuous, and that he had no reasonable opportunity to escape the compulsion without committing the crime. Corujo, 424 So.2d at 44. "If there is evidence to support a theory of coercion, the jury must be properly instructed on the defense." Id.; Koontz, 204 So.2d at 227.
Our examination of the record in the instant case leads us to conclude that there was no evidence which warranted a duress instruction. Appellant's testimony concerning his apprehension in the presence of Maurice is inconsistent with all the other evidence presented at trial and falls far short of any indication that Maurice threatened or even intended to intimidate appellant. The trial court did not err in denying the requested jury instruction on the defense of duress.
The second issue concerns the trial court's decision to instruct the jury according to the tenets of Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), although the jury had not announced that it was deadlocked. An Allen charge is a supplemental instruction generally given when it appears the jury is having difficulty reaching a verdict. United States v. Nickell, 883 F.2d 824 (9th Cir.1989); United States v. Blevinal, 607 F.2d 1124, 1126 (5th Cir.1979), cert. denied, 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980). In giving an Allen charge, the trial court must avoid: (1) coercive deadlines, (2) threats of marathon deliberations, (3) pressure for the surrender of conscientiously held minority views, and (4) any implication of a false duty to decide. United States v. Cheramie, 520 F.2d 325 (5th Cir.1975). See also Webb v. State, 519 So.2d 748, 749 (Fla. 4th DCA 1988); Heddleson v. State, 512 So.2d 957, 959 (Fla. 4th DCA 1987); Lewis v. State, 369 So.2d 667, 669 (Fla.2d DCA 1979); United States v. Barshov, 733 F.2d 842 (11th Cir.1984), cert. denied, 469 U.S. 1158, 105 S.Ct. 904, 83 L.Ed.2d 919 (1985). A trial court should say nothing to a jury that would influence a single juror to abandon his conscientious belief as to the correctness of his position. Bell v. State, 311 So.2d 179 (Fla. 1st DCA 1975); Rodriquez v. State, 462 So.2d 1175, 1177 (Fla.3d DCA), review denied, 471 So.2d 44 (Fla. 1985); Lewis v. State, 369 So.2d at 669; United States v. Blevinal, 607 F.2d at 1126.
Absent fundamental error, an objection is required to preserve the propriety of an Allen charge for appellate review. Armstrong v. State, 364 So.2d 1238 (Fla. 1st DCA 1977), cert. denied, 373 So.2d 456 (Fla. 1979); Warren v. State, 498 So.2d 472 (Fla.3d DCA 1986), review denied, 503 So.2d 328 (Fla. 1987); United States v. Taylor, 513 F.2d 70, 72 (5th Cir.), cert. denied, 423 U.S. 947, 96 S.Ct. 361, 46 L.Ed.2d 281 (1975). Fundamental error was found in Webb, due to the coercive instruction that "the verdict must be unanimous. It must be six votes and it must be rendered tonight." 519 So.2d at 749. Similarly, in Heddleson the court found reversible error because the trial court's comments coerced the jury into believing a verdict had to be reached in the time allotted for trial, otherwise the defendant would not be retried and would escape prosecution. 512 So.2d at 959. And in Warren, the trial judge's *460 comments made it clear that he did not wish to try the case again, that retrial would be very costly, and that he sincerely hoped the jury would return a verdict if at all possible. Based on the totality of the circumstances, the court found the trial court's deviation from the standard deadlock jury charge went to the foundation of the case and constituted fundamental error. 498 So.2d at 477-478. See also United States v. Taylor, 513 F.2d 70, 72 (5th Cir.), cert. denied, 423 U.S. 947, 96 S.Ct. 361, 46 L.Ed.2d 281 (1975), holding that every Allen charge situation must be decided upon the particular facts and circumstances of the individual situation, thereby rejecting the proposition that a time deadline added to an Allen charge is reversible error in and of itself. In Taylor, as in the instant case, there was no objection to the Allen charge, and no request for a curative instruction.
In Armstrong, this court held that it is error to give the standard jury deadlock charge in the absence of a deadlocked jury. The court further found such error was not fundamental, "and the failure to object waived any objection appellant might have had to the instruction." 364 So.2d at 1238. The Fifth Circuit took a contra position in Blevinal. There, the court said the trial court is free to return the jury for supplemental instructions on its own motion, and is not required to wait for a suggestion of deadlock from the jury or from counsel. 607 F.2d at 1126-1127.
In this case, as in Armstrong, there had been no assertion of deadlock when the supplemental instruction was given, and no objection was raised to the supplemental instruction. Consequently, pursuant to Armstrong, the supplemental instruction in this case does not constitute reversible error. See also Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988).
Furthermore, we conclude that the supplemental charge in this case is not coercive when it is considered in proper context. Indeed, the fact that no objection was raised to the supplemental instruction indicates that the potential for coercion did not appear so to one on the scene. See Lowenfield v. Phelps, 108 S.Ct. at 552. The trial court did not restrict the jury's deliberation by an arbitrary deadline, nor did the court require that the jury reach a verdict. Since the jury had not completed its work at the usual adjournment time, it was not inappropriate to return the jurors to the courtroom to provide guidance. See, generally, Blevinal, 607 F.2d at 1126-1127.
In this regard, appellant's reliance on Rodriquez v. State, 559 So.2d 678 (Fla.3d DCA 1990), is misplaced. In Rodriquez, after the jury had deliberated three hours, it was returned to the courtroom to be met by the trial court's comment that "this has been a three-witness case." In addition, the trial court polled the jurors to determine how far they were from an agreement. The court found the trial court erred in polling the jury on its numerical division, and further compounded the problem by its comment, which indicated that in the judge's view the jury was taking too long. In contrast, in this case, the trial court interjected no prejudicial comments, and did not poll the jury.
The third issue concerns the discrepancy between the jury verdict and the written judgment and sentence. Although the jury found appellant guilty of unarmed robbery, the written judgment and sentence indicates that appellant was guilty of robbery with a firearm. The state agrees that the scrivener's error in the judgment must be corrected.
Accordingly, we remand for correction of the written judgment and sentence, to conform the convicted offense to the jury's verdict of guilty of unarmed robbery. In all other respects, the trial court's dispositions of the appealed issues are affirmed.
BOOTH and BARFIELD, JJ., concur.
NOTES
[1] The investigator's testimony regarding appellant's knowledge that Maurice possessed a gun follows:

A. Yes, sir. He told me the gun came from a subject named Eric Boyd.
Q. And how did he know that?
A. Eric Boyd, Gahley told me, was related to Maurice and had given him the gun.
Q. The defendant was with Maurice when Eric Boyd gave him the gun?
A. I would assume that's how he knew. I don't know.