[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-12075

Non-Argument Calendar

_____

LENNARD SIMMONS,

                                        Petitioner-Appellant,

*versus*

GREGORY MCLAUGHLIN,

                                        Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 3:19-cv-00083-TCB

_____

Before WILSON, GRANT and DUBINA, Circuit Judges.

PER CURIAM:

Petitioner Lennard Simmons, a counseled Georgia prisoner, appeals the district court's order denying his 28 U.S.C. § 2254 petition. A single judge of this Court issued a certificate of appealability ("COA") on "[w]hether appellate counsel was ineffective for failing to argue that the state trial judge's instructions to the jury and inquiry into their numerical split coerced a verdict, in violation of Simmons's rights to due process and a fair trial." After reviewing the record and reading the parties' briefs, we affirm the district court's order denying Simmons relief on his § 2254 petition.

## I.

"We review *de novo* [the] district court's grant or denial of a habeas corpus petition." *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005). An ineffective-assistance-of-counsel claim is a mixed question of law and fact that we review *de novo*. *Jones v. Campbell*, 436 F.3d 1285, 1292 (11th Cir. 2006). However, our review of counsel's performance is "highly deferential," and we avoid second-guessing counsel's performance. *Id.* at 1293.

The scope of appellate review is limited to the issues enumerated in the COA. 28 U.S.C. § 2253(c)(2)–(3); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). Nevertheless, we will construe "the issue specification in light of the pleadings and other parts of the record," and "[a] COA as including the threshold issue

of procedural default as well as the merits" of an issue raised. *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1258 (11th Cir. 2002) (quotation marks omitted).

## II.

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), there is a "highly deferential standard for evaluating state-court rulings and [it] demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010) (citation and quotation marks omitted). The AEDPA provides that, after a state court has adjudicated a claim on the merits, a federal court may grant habeas relief only if the state court's decision was (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Thus, "[w]e review *de novo* the district court's decision about whether the state court acted contrary to clearly established federal law, unreasonably applied federal law, or made an unreasonable determination of fact." *Reed v. Sec'y, Fla. Dep't of Corr.*, 593 F.3d 1217, 1239 (11th Cir. 2010) (quotation marks omitted). In reviewing the district court's findings, we are mindful that, in essence, we are reviewing "the final state habeas judgment." *Id.* (quotation marks omitted).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether

that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939 (2007). A state-court decision represents an unreasonable application of clearly established federal law if the state court correctly identifies the governing legal rule from Supreme Court cases but unreasonably applies it to the facts of a case. *Washington v. Crosby*, 324 F.3d 1263, 1265 (11th Cir. 2003). The "unreasonable application" inquiry requires that the state court decision "be more than incorrect or erroneous"—it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S. Ct. 1166, 1174 (2003).

A decision that is based on state procedural grounds, however, is not an adjudication on the merits that is entitled to deference under § 2254(d). *See Williams v. Alabama*, 791 F.3d 1267, 1272–73 (11th Cir. 2015). A federal claim is subject to procedural default where (1) the state court applies an independent and adequate ground of state procedure to conclude that the petitioner's federal claim is barred or (2) the petitioner never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state procedural rules. *Owen v. Sec'y, Dept. of Corr.*, 568 F.3d 894, 908, 908 n.9 (11th Cir. 2009). Georgia's procedural default rule provides an adequate and independent state ground for denial of a habeas claim. *See Ward v. Hall*, 592 F.3d 1144, 1175–76 (11th Cir. 2010); O.C.G.A. § 9-14-48(d). This rule provides that, absent a showing of cause and prejudice or a miscarriage of justice, habeas corpus relief shall not be granted in

connection with any claim that was not timely raised in accordance with Georgia procedural rules. O.C.G.A. § 9-14-48(d). Under Georgia law, a claim is procedurally defaulted and cannot be considered on the merits in a habeas petition if the petitioner fails to raise it on direct appeal. *See Chatman v. Mancill*, 626 S.E.2d 102, 105 (Ga. 2006); O.C.G.A. § 9-14-40.

Before seeking federal habeas relief, a state prisoner must exhaust his federal constitutional claims in state court by presenting them to the state's highest court, either on direct appeal or collateral review. *Ward*, 592 F.3d at 1156. Federal review of a procedurally defaulted claim is available if a petitioner can show both cause for the default and actual prejudice resulting from it. *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017). Ineffective assistance of counsel may be cause for a procedural default, but attorney error short of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), is not. *Jackson v. Herring*, 42 F.3d 1350, 1358 (11th Cir. 1995). "In order to establish prejudice to excuse a default, the petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different absent the constitutional violation." *Raleigh v. Sec'y, Fla. Dept. of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quotation marks omitted).

Turning to the Sixth Amendment's guarantee of the right to the assistance of counsel during criminal proceedings, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that (1) his counsel's performance was deficient, i.e.,

the performance fell below an objective standard of reasonable-ness; and (2) he suffered prejudice as a result of that deficiency. *Strickland*, 466 U.S. at 687–88. The benchmark for judging a claim of ineffective assistance of counsel is whether counsel's perfor-mance so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Id.* at 686.

When the deferential standard of *Strickland* is combined with the deferential standard of the AEDPA, the result is a doubly deferential standard of review in federal court. *Harrington v. Rich-ter*, 562 U.S. 86, 105, 131 S. Ct. 770, 788 (2011). Under § 2254(d), "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420 (2009) (quotation marks omitted). "It was meant to be, and is, difficult for a petitioner to prevail under that stringent standard." *Nance v. Warden, Ga. Diagnostic Prison*, 922 F.3d 1298, 1301 (11th Cir. 2019), *cert. denied*, *Nance v. Ford*, 140 S. Ct. 2520 (2020).

In applying *Strickland* to an attorney's failure to object or move for a mistrial, we ask whether there is a reasonable probabil-ity of a different result, had counsel objected or moved for a mis-trial, which requires an error meriting an objection or a mistrial. *Brewster v. Hetzel*, 913 F.3d 1042, 1052 (11th Cir. 2019). A defend-ant who is tried by a jury is entitled to an uncoerced verdict. *Id.* at

1053. "[S]imple pressure to agree" is not coercion, as that pressure is a natural characteristic of jury deliberations. *See id.* (quotation marks omitted). Pressure on a jury becomes coercive when the court's actions result in a juror sacrificing her "conscientious scruples for the sake of reaching agreement." *Id.* (quotation marks omitted). A trial court may direct a deadlocked jury to continue deliberating but may not coerce a juror to surrender an honest belief. *Id.*

Trial courts have broad discretion in conducting trials, and we will normally not intervene absent a clear showing of abuse of that discretion. *United States v. Gabay*, 923 F.2d 1536, 1541 (11th Cir. 1991). When appropriate, we will also review the trial court's use of an *Allen*[1] charge, a direction used for when jury deliberations initially fail to result in a verdict, for abuse of discretion, and a court abuses its discretion only if such a charge was inherently coercive. *See United States v. Woodard*, 531 F.3d 1352, 1364 (11th Cir. 2008).

In considering whether a trial court's statement unduly coerced a jury into rendering a verdict, we "look[] to the language employed and that language's impact, under the circumstances, on the finders of facts." *United States v. Blevinal*, 607 F.2d 1124, 1127 (5th Cir. 1979) (quotation marks omitted); *see also United States v. Grow*, 977 F.3d 1310, 1329 (11th Cir. 2020) ("The applicable

---

[1] *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154 (1896).

standard . . . is whether under the totality of the circumstances the trial judge's instruction to the jury was coercive.").

In giving an *Allen* charge, the district court "instructs a deadlocked jury to undertake further efforts to reach a verdict." *United States v. Bush*, 727 F.3d 1308, 1311 n.1 (11th Cir. 2013) (quotation marks omitted). Although we have "criticized the practice of giving *Allen* charges, we have squarely held that they are permissible," as long as the trial court does not "coerce any juror to give up an honest belief." *United States v. Anderson*, 1 F.4th 1244, 1269 (11th Cir. 2021) (quotation marks omitted).

We examine the totality of the circumstances to determine if the trial court's actions created a substantial risk that one or more jurors would be coerced into abandoning their honest beliefs. *Brewster*, 913 F.3d at 1053. Relevant circumstances include the following:

> (1) the total length of deliberations; (2) the number of times the jury reported being deadlocked and was instructed to resume deliberations; (3) whether the judge knew of the jury's numerical split when he instructed the jury to continue deliberating; (4) whether any of the instructions implied that the jurors were violating their oaths or acting improperly by failing to reach a verdict; and (5) the time between the final supplemental instruction and the jury's verdict.

*Id.* This list is not exhaustive; whether there was a substantial risk of coercion depends on the totality of the circumstances and an

assessment of their cumulative effect. *Id.* Pressure on jurors is heightened when the trial court, knowing how the jury is split and in what direction, instructs the jury to keep trying to reach a unanimous verdict. *Id.* at 1054.

## III.

The petitioner relies on *Brewster* to support his claim that the trial court violated his rights when it inquired into the jury's numerical division and coerced the jury into compromising their verdict. In *Brewster*, we found that the trial court's conduct had coerced the jury's verdict, where the jurors "faced the cumulative effect of a formal *Allen* charge, three additional instructions from the court to continue deliberating after the judge knew that there was only one holdout left, and the removal of all reading material from the jury room" in response to a report that the holdout juror was using that material to avoid pressure from the other jurors. *See* 913 F.3d at 1054. In particular, the jurors sent six notes to the trial court stating that they could not reach a verdict and disclosed how they were divided six times, including how many favored a guilty verdict and how many did not. *Id.* at 1047. The trial court gave a formal *Allen* charge and additional admonitions that the jurors had to continue deliberating throughout the jury's deadlock. *Id.* When the one juror who would not vote to convict was doing crossword puzzles, the trial court ordered all reading materials removed from the jury room, and 18 minutes later, the juror returned a guilty verdict. *Id.* During all this time, Brewster's counsel did not object or move for a mistrial. *Id.*

On appeal of the district court's denial of his § 2254 petition, Brewster argued that his trial counsel had rendered ineffective assistance by failing to object or move for a mistrial at any point during the "deadlocked deliberations." *Id.* at 1047. Brewster raised the same claim in his § 2254 petition that he raised in the state habeas and state appellate courts, which had rejected his claim after construing it as an attack on one of the trial court's supplemental instructions without specifying which one. *Id.* at 1051. As a result, this court concluded that Brewster's actual substantive claim had not been decided on the merits in state courts and reviewed it *de novo*. *Id.*

We held that counsel's performance was deficient because there was no reasonable strategy for failing to object and move for a mistrial, where the jury had already made five declarations of deadlock, two different judges had given four written and oral instructions to continue deliberating, the second judge implied that the holdout juror was violating her oath by not joining the other jurors, and the jury had periodically disclosed numerical breakdowns in favor of convicting the defendant. *Id.* at 1057–59. We also held that counsel's failure to object and move for a mistrial was prejudicial, given that the coercive circumstances that led to the verdict—the judge pressuring a deadlocked jury numerous times to reach a verdict—undermined the reliability of the verdict and the fundamental fairness of the trial. *Id.* at 1056.

Simmons's reliance on *Brewster* is misplaced because, reviewing the record and considering the totality of the

circumstances, the trial court did not violate his constitutional rights when it made comments to the jury, inquired into its numerical split and instructed the jury to continue deliberations. Neither party objected to the trial court's comments to the jury, inquiry regarding the jury's numerical split, or the trial court's instructions. Further, both parties acknowledged on the record that they were satisfied with the trial court's comments, inquiries, and instructions.

Moreover, the substantive claim that the state trial court's conduct violated Simmons's Fourteenth Amendment rights is procedurally barred from federal review. The state habeas court denied the claim on the adequate and independent state-law ground that he failed to raise the claim on direct appeal. Simmons must demonstrate cause to overcome this procedural bar by showing that appellate counsel rendered ineffective assistance under *Strickland* when he failed to argue on appeal that the state trial court coerced the verdict by its comments and instructions to the jury.

We conclude from the record that the district court correctly denied Simmons habeas relief because Simmons failed to show that his appellate counsel was deficient or that any deficiency was prejudicial to his fair trial rights. Consequently, Simmons failed to show cause to overcome the procedural default of his underlying claim that the trial court's conduct violated his constitutional rights. Simmons has not established cause to overcome the procedural bar because the record demonstrates that his appellate counsel did not act unreasonably by failing to raise the claim on direct

appeal, as the state trial court's comments and instructions did not coerce the jury's verdict, under applicable federal law. Accordingly, based on the aforementioned reasons, we affirm the district court's order denying Simmons relief on his § 2254 habeas petition.

**AFFIRMED.**