691 So.2d 1185 (1997)
James SCOGGINS, Appellant,
v.
STATE of Florida, Appellee.
No. 96-0228.
District Court of Appeal of Florida, Fourth District.
April 23, 1997.
Richard L. Jorandby, Public Defender, and Ellen Morris, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Ettie Feistmann, Assistant Attorney General, West Palm Beach, for appellee.
*1186 GROSS, Judge.
The primary issue in this case concerns the trial court's inquiry into the numerical division of the jury after being informed that the jury was at an impasse. We hold that such inquiry is error that must be analyzed under the totality of the circumstances to determine if the jury was coerced into returning a verdict.
Appellant James Scoggins was convicted of possession of cocaine following a jury trial. The evidence at trial was that the police found crack cocaine in the ashtray of Scoggins' truck after a traffic stop. Initially, Scoggins said that the drugs did not belong to him. He pointed out that he had recently loaned his truck to someone else. After his arrest, on the way to the police station, Scoggins admitted that the drugs were his.
After some deliberations, the jury sent a written question to the court:
We do not have a unanimous jury at this time and those who are in disagreement feel that they will not change their minds. What should we do?
Outside the presence of the jury, the judge asked both trial counsel if they objected to his asking the jury how it was numerically split. Neither objected. The following exchange between the court and the jury foreperson then occurred:
COURT: ... [D]o you think further deliberations would help at all?
[FOREPERSON]: There are those who feel that further deliberations would not help them.
COURT: Okay. Can I assume by that, that more than one personthe split is more than one person?
[FOREPERSON]: Yes.
COURT: So, in other words, at least four to two?
[FOREPERSON]: Yes.
COURT: Okay. And what about if I reset the deliberations until tomorrow, have you come back, you think that would serve any useful purpose?
[FOREPERSON]: You have to do what you feel is right.
COURT: Really, I don't wantthis is a very sensitive area, because I'm not allowed to make inquiry about a jury's deliberations, just not allowed to. So I can't ask you more than that.
If you as a foreperson are advising me that you think in any way that by resetting this until tomorrow, that could help this jury come to a decision, I will do it. If you think there's no way if you want to talk to the other jurors, and if you think there's no way, then I'll declare a mistrial.
[FOREPERSON]: Am I allowed to express my personal feelings?
COURT: No.
[FOREPERSON]: Perhaps we should go back into the room, just decide whether or not we should meet tomorrow, and then come back out again.
After retiring to the jury room, a short while later the jury sent a note to the judge indicating that they were "willing to come back tomorrow & deliberate for a little longer being we are still divided. We prefer morning." The court excused the jury for the evening. Neither side requested the jury deadlock charge and the trial judge did not give it. See Fla. Std. Jury Instr. (Crim.) 3.06. Following deliberations the next morning, the jury returned a guilty verdict.
Two Florida cases have held that it is error for a trial judge to ask the jury for its numerical split during deliberations. McKinney v. State, 640 So.2d 1183, 1186-87 (Fla. 2d DCA 1994), reaches this conclusion without discussion and suggests that the harmless error analysis applies. Rodriguez v. State, 559 So.2d 678 (Fla. 3d DCA 1990), takes a more extreme view, holding that the error is fundamental and indicating that such polling of the jury is per se reversible. Rodriguez adopts the rule of the United States Supreme Court in Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), from which it quotes at length:
We deem it essential to the fair and impartial conduct of the trial, that the inquiry[1] itself should be regarded as ground *1187 for reversal. Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded.
Rodriguez, 559 So.2d at 679 (quoting Brasfield, 272 U.S. at 450, 47 S.Ct. at 135-36) (footnote added).
Since Brasfield was decided in 1926, there has been much litigation concerning the propriety of a trial court's inquiry into the jury's numerical division. See George R. Preist, Annotation, Propriety and Prejudicial Effect of Trial Court's Inquiry as to Numerical Division of Jury, 77 A.L.R.3d 769 (1977). The federal courts follow Brasfield's holding that such an inquiry is per se reversible error. See, e.g., United States v. Webb, 816 F.2d 1263, 1266 (8th Cir.1987); Cornell v. State of Iowa, 628 F.2d 1044, 1047 (8th Cir. 1980), cert. denied, 449 U.S. 1126, 101 S.Ct. 944, 67 L.Ed.2d 112 (1981); Government of the Virgin Islands v. Romain, 600 F.2d 435 (3d Cir.1979).[2]
Even though it is the rule in the federal system, Brasfield is not binding on the states. The source of the Brasfield rule is not the federal constitution; it is a rule of judicial administration based on the supervisory power of the Supreme Court over the federal court system. Lowenfield v. Phelps, 484 U.S. 231, 239-40, 108 S.Ct. 546, 552, 98 L.Ed.2d 568 (1988); Cornell, 628 F.2d at 1047; Ellis v. Reed, 596 F.2d 1195, 1197 (4th Cir.), cert. denied, 444 U.S. 973, 100 S.Ct. 468, 62 L.Ed.2d 388 (1979). Every federal court of appeals that has addressed the issue has "rejected the notion that Brasfield's per se reversal approach must be followed" by the states. Lowenfield, 484 U.S. at 240, 108 S.Ct. at 552; see, e.g., Montoya v. Scott, 65 F.3d 405, 412 (5th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1417, 134 L.Ed.2d 542 (1996).
The states are divided on whether it is error for the trial judge to inquire into the numerical division of a jury. Some states hold that the inquiry is proper, as part of the trial judge's power over the conduct of the trial. See Dunford v. State, 614 P.2d 1115 (Okla.Crim.App.1980); Sharplin v. State, 330 So.2d 591, 596 (Miss.1976); People v. Carter, 68 Cal.2d 810, 69 Cal.Rptr. 297, 300, 442 P.2d 353, 356 (1968), abrogated on other grounds sub nom., People v. Gainer, 19 Cal.3d 835, 139 Cal.Rptr. 861, 566 P.2d 997 (1977). This view rests on the assumption that knowledge of the numerical division will assist the court in discharging a proper function, such as knowing when to grant a mistrial or give further instructions. Carter, 69 Cal.Rptr. at 300, 442 P.2d at 356; Dunford, 614 P.2d at 1118.
The fallacy in this approach is that it equates the state of numerical division with the stage of deliberations. For this reason we align ourselves with our sister courts, the federal courts and those state courts that have held that a trial judge should not inquire into the numerical division of the jury. See State v. Roberts, 131 Ariz. 513, 642 P.2d 858 (1982); State v. Rickerson, 95 N.M. 666, 625 P.2d 1183, cert. denied, 454 U.S. 845, 102 S.Ct. 161, 70 L.Ed.2d 132 (1981); People v. Wilson, 390 Mich. 689, 213 N.W.2d 193 (1973); State v. Hutchins, 43 N.J. 85, 202 A.2d 678 (1964). For whatever reason, whether to gauge the time for an evening recess or to decide whether to give the jury a *1188 deadlock charge, if a trial judge inquires into the sensitive area of the possibility of a verdict, the better practice is to admonish the jury at the outset not to indicate how they stand as to conviction or acquittal.[3]
The reasons for the rule precluding a judge from delving into the jury's numerical division are those articulated in Brasfield: the inquiry serves no useful purpose that cannot be attained through less intrusive questions; the inquiry has a tendency to be coercive; and it interferes with the proper relation of the judge to the jury. 272 U.S. at 450, 47 S.Ct. at 135-36. A principal aim of a jury trial is the receipt of a verdict that fairly reflects the considered judgment of each juror. See Fla. Std. Jury Instr. (Crim.) 2.09. Maintaining the secrecy in jury deliberations is important to insure an open and uninhibited exchange of ideas among the jurors. When combined with comments that belie the judge's feelings, or with instructions such as the jury deadlock charge, disclosure of the jury's numerical division risks conveying the message that the court believes that the majority should prevail, creating the "doubly coercive effect of melting the resistance of the minority and freezing the determination of the majority." Wilson, 213 N.W.2d at 195.
Although we hold that it is error for a trial judge to delve into the jury's numerical split, we disagree with Brasfield, and the third district's implication in Rodriguez, that such questioning is per se reversible error. The better view is to analyze the judge's inquiry under the totality of the circumstances to determine if the trial court's actions had an improperly coercive influence upon the jury. See, e.g., Lowenfield, 484 U.S. at 236, 108 S.Ct. at 550; Montoya, 65 F.3d at 412; Cornell, 628 F.2d at 1048; Roberts, 642 P.2d at 860. A coerced verdict in a criminal case infringes upon two rights guaranteed by the Florida Constitutionthe right to a fair trial under the due process clause and the right to an impartial jury. Article I, §§ 9, 16, Fla. Const.; Webb v. State, 519 So.2d 748, 749 (Fla. 4th DCA 1988).
For example, although the use of a jury deadlock charge has long been sanctioned by the courts, Lowenfield, 484 U.S. at 237, 108 S.Ct. at 550; Kelley v. State, 486 So.2d 578 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986), a trial court must leave the jury "free to reach its own conclusions and to record its conscientious convictions." Wissel v. United States, 22 F.2d 468 (2d Cir.1927). The fear is that members of a deadlocked jury will use a judge's words and actions to support a position on the merits of the case or to pressure the minority to agree simply for the sake of a verdict. McKinney, 640 So.2d at 1187. As Judge Glickstein observed in Nelson v. State, 438 So.2d 1060, 1062 (Fla. 4th DCA 1983),
[i]t is the genius of our jury system that twelve impartial persons, individually, applying a subjective standard, come to a common conclusion of a defendant's guilt beyond a reasonable doubt. This fundamental principle becomes subverted if a jury member is pressured to defer to the opinion of his peers, for unanimity is made a sham thereby. An objective standard is in effect substituted for the subjective, by virtue of the implication that the majority opinion is reasonable, and the minority unreasonable.
In this case, before questioning the jury about its numerical division, the trial judge asked if either the prosecution or the defense had any objection. Both lawyers acceded to the proposed inquiry and requested no additional instruction. Absent fundamental error, an objection is required to preserve the issue of a trial judge's coercion of a verdict for appellate review. See Palmer v. State, 681 So.2d 767 (Fla. 5th DCA 1996); Gahley v. State, 567 So.2d 456, 459 (Fla. 1st DCA 1990), review denied, 577 *1189 So.2d 1326 (Fla.1991); Warren v. State, 498 So.2d 472, 477 (Fla. 3d DCA 1986), review denied, 503 So.2d 328 (Fla.1987). One reason for requiring an objection is to place the "trial judge on notice that an error may have been committed" and to provide the judge with the opportunity to correct it on the spot. Castor v. State, 365 So.2d 701, 703 (Fla.1978). If certain judicial conduct could be construed as coercive, an objection can alert the court to the necessity of an additional instruction which might blunt the improper impact on the jury.
Fundamental error has been defined as one that goes to the essence of a fair and impartial trial, error so fundamentally unfair as to amount to a denial of due process. Kilgore v. State, 688 So.2d 895 (Fla. 1996) (citing Davis v. Zant, 36 F.3d 1538, 1545 (11th Cir.1994)); Rodriguez v. State, 462 So.2d 1175, 1177 (Fla. 3d DCA 1985), review denied, 471 So.2d 44 (Fla.1985); Castor, 365 So.2d at 704 n. 7. One characteristic of a fundamental error can be that no corrective instruction or action by the court would have "obliterated the taint" caused by the improper conduct. Webb, 519 So.2d at 749. When confronting a claim that the jury's verdict was unconstitutionally coerced, our fundamental error analysis depends on the constitutional analysis. If the totality of the circumstances supports the finding of improper coercion of the jury, then there has been a type of constitutional violation which is fundamental error, and per se reversible. On the other hand, in this case, error not amounting to a constitutional violation is not fundamental error, so an objection at trial is necessary to preserve the issue and a harmless error analysis is appropriate. See § 924.051(3), Fla. Stat. (Supp.1996); State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
Other than the inquiry into the jury's numerical division, the trial judge's interaction with the jury presents none of those factors that courts have identified as being improperly coercive. The jury was not placed under time pressure to return a verdict. Compare Webb, 519 So.2d at 749 (where the court told the jury that the verdict "must be six votes and it has to be rendered tonight"); Heddleson v. State, 512 So.2d 957, 959 (Fla. 4th DCA 1987). There was no exhortation of the jury to consider extraneous and improper factors, such as the government's fiscal health, in arriving at a decision. Rodriguez, 462 So.2d at 1175; compare Warren, 498 So.2d at 477-78 (court emphasized the "needless cost in retrying the case in the event of a hung jury"). No potential holdout juror was isolated and demeaned for being in the minority. Compare Jones v. State, 92 So.2d 261 (Fla. 1956)(judge's charge inferred that a lone holdout juror would be "a stubborn mule or jackass"). No charge indicated that the jury was required to reach a unanimous verdict or that the jurors had a duty to do so. Kelley, 486 So.2d at 584-85; State v. Bryan, 290 So.2d 482 (Fla.1974); Webb, 519 So.2d at 749; Nelson, 438 So.2d at 1062; Rodriguez, 462 So.2d at 1178; Bell v. State, 311 So.2d 179 (Fla. 1st DCA 1975). There was no threat of marathon deliberations. See Gahley, 567 So.2d at 459. The judge did not ask whether the jurors in the majority were for acquittal or a guilty verdict; nor did he single out the minority jurors in imploring the jury to come to a decision. Locks v. Sumner, 703 F.2d 403, 407 (9th Cir.1983); Williams v. Parke, 741 F.2d 847, 850-51(6th Cir.1984), cert. denied, 470 U.S. 1029, 105 S.Ct. 1399, 84 L.Ed.2d 787 (1985). This case did not involve a jury minority that, because of its lengthy service, might be particularly susceptible to coercion. Williams, 741 F.2d at 850-51. The judge's comments were balanced, encouraging neither acquittal nor conviction. Kelley, 486 So.2d at 584.
Finally, the absence of prejudicial effect is demonstrated by the jury's choice to continue to deliberate the next day. The jurors did not return a verdict shortly after their contact with the judge. See Id. at 585.
Looking at the totality of the circumstances, we find no fundamental or constitutional error. We also find no error in the trial court's reinstruction to the jury on the substantive charge.
AFFIRMED.
KLEIN, J., and GERSTEN, CAROL R., Associate Judge, concur.
NOTES
[1] In Brasfield, after some hours of deliberation, the trial judge inquired how the jury was divided numerically. The foreman advised that it "stood nine to three, without indicating which number favored a conviction." 272 U.S. at 449, 47 S.Ct. at 135.
[2] The Brasfield rule has not been inflexibly applied to situations devoid of coercion. Beale v. United States, 263 F.2d 215 (5th Cir.1959)(no infraction of Brasfield where judge "actuated" by solicitude for the jury, to arrange a suitable luncheon hour, and not by a desire to pry into or influence their deliberation); Butler v. United States, 254 F.2d 875 (5th Cir.1958); Anderson v. United States, 262 F.2d 764 (8th Cir.), cert. denied, 360 U.S. 929, 79 S.Ct. 1446, 3 L.Ed.2d 1543 (1959).
[3] For example, in the federal system, a standard jury instruction reads:

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.
Eleventh Circuit Pattern Jury Instructions, Criminal Cases, Instruction 12 (District Judges Assoc. 1985) (emphasis supplied).