952 So.2d 630 (2007)
Jorge RUBI, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-4066.
District Court of Appeal of Florida, Fourth District.
April 4, 2007.
*631 Jonathan S. Friedman of Jonathan S. Friedman, P.A., Fort Lauderdale, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Myra J. Fried, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
When the jury deliberating appellant's case sent a note to the judge telling him that one of their members was not following the law, the judge instructed the jurors that they must follow the law, and all of the participants were depending on them to do so. Under the circumstances of this case, where the judge had previously given an Allen charge, we conclude that this was a coercive instruction which requires reversal.
The state charged appellant with aggravated battery, alleging that he hit a bouncer in the head with a beer bottle during a fight in front of a bar. The testimony at trial was conflicting, and appellant claimed that another person hit the bouncer. The court gave a standard charge to the jury, which consisted of four women and two men.
The jury began to deliberate around 12:30 in the afternoon. Later during jury deliberations, the jury advised the court as follows: "At this time we are not able to reach a unanimous decision on this case." *632 After the court and counsel discussed various possibilities on how to proceed, the court ultimately decided to bring the jurors back in to ask them whether they might reach a verdict if given more time. When the foreperson indicated that more time would not help, the court gave the Allen charge with the consent of counsel.
THE COURT: Ladies and Gentlemen of the Jury, I'm now going to instruct you as follows: I know that all of you have worked hard to try to find a verdict in this case. It apparently has been impossible for you so far.
Sometimes an early vote before discussion can make it hard to reach an agreement about the case later. The vote, not the discussion, might make it hard to see all sides of the case. We are all aware it is legally permissible for a jury to disagree.
There are two things a jury can lawfully do; agree on a verdict or disagree on what the facts of the case may truly be. There is nothing to disagree about on the law. The law is as I told you. If you have any disagreements about the law I should clear them up for you now. That should be my problem not yours. If you disagree over what you believe the evidence showed then only you can resolve that conflict if it is to be resolved.
I have only one request of you. By law I cannot demand this of you, but I want you to go back into the jury room, then, taking your turns, tell each of the other jurors about any weaknesses of your own positions. You shall not interrupt each other's comments or each other's views until each of you have had a chance to talk.
After you've done that, if you simply cannot reach a verdict then come back to the courtroom and I will declare this case a mistrial and we'll discharge you for your services. You may now retire to continue with your deliberations. Thank you, Ladies and Gentlemen.
Thus, the trial court provided the standard Allen charge set forth in Florida Standard Jury Instruction (Criminal) 3.06 and derived from Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).
The jury then exited to continue with its deliberations. Subsequently, the jury sent out another note, which stated:
We, the Jury, have the following question: One of our jurors is assuming and speculating on the evidence. Based upon his responses he is not following the law. The facts of the case is [sic] being said to not be factual and/or  and/or not conceivable.
The judge observed that the note "doesn't say they're at an impasse." After re-reading the note, the court stated: "My thought is to  they're not saying that they can't reach a verdict, they are not saying that. It's not really a question, it's a statement. It's not a statement though that says they can't reach a verdict." The prosecutor suggested dismissing the jury for the night and simply reconvening the next morning. However, defense counsel suggested that the trial court should "just instruct the jurors that you have heard the laws that apply to this case, those are the only laws that you must apply to this case."
The prosecutor then expressed reservations and suggested that a mistrial could be warranted in the situation:
[PROSECUTOR]: See, my concern is this, from what they're saying I don't think that it's they don't know what the law is, and, like you said, they have the instructions. It seems to me we have a juror who's willfully disregarding what *633 they've been instructed by the Court, and that could go either direction.
* * *
And, I'm thinking, I don't know, maybe that is something that needs to be a mistrial, I don't know.
The court then posed the following question to counsel:
THE COURT: But, I mean, both of you counsel agree that the statement, first of all, it's not a question, even though it says it on the question sheet, it's not a question, it's a statement, and the statement does not indicate they can't reach a verdict?
[PROSECUTOR]: Well, I think that's the implication.

THE COURT: It may be, but it's not fully stated there and that's my concern. It says one of the jurors is not following the law.
Defense counsel suggested that the court simply repeat the instruction on following the law:
[DEFENSE COUNSEL]: My suggestion is just a brief statement to the jury that you've heard the law, you are to follow the law as I instructed you in order to apply it in this case. You can't Allen charge them again. You're not really  like you said, they're not stating that, but I think you could read into that somewhat that they're sort of like at a deadlock again.
During the discussion of how to handle the situation, the court noted that it was almost a quarter until 7:00. Ultimately, the trial court agreed with the defense's suggestions, and over the objection of the prosecutor, brought the jury back to the courtroom and instructed them as follows:
THE COURT: Ladies and Gentlemen, the question I have is as follows: "One of our jurors is assuming and speculating on the evidence. Based upon his responses he is not following the law. The facts of the case is being said to not be factual and/or not conceivable." Signed again by the foreperson.
Ladies and Gentlemen, pursuant to the instructions I previously gave you, both orally and verbally, I'm going to repeat one of those instructions. It's under 3.10, Rules For Deliberations, Subsection 1.
You must follow the law as it is set out in these instructions. If you fail to follow the law, your verdict will be a miscarriage of justice. There is no reason for failing to follow the law in this case. All of us are depending upon you to make a wise and legal decision in this matter.
Thank you very much, Ladies and Gentlemen, you may reconvene for your deliberations. Thank you.
At 6:48 p.m., a few minutes after receiving this instruction from the judge, the jury returned a verdict of guilty.
In the appellant's motion for a new trial, appellant contended that the trial court should have sua sponte declared a mistrial where the second instruction to the jury inappropriately directed the jury to reach a decision. The trial court denied the motion, concluding that the jury did not announce deadlock, so the court only gave one Allen charge. This appeal follows.
In giving an Allen instruction, a trial court must avoid: 1) coercive deadlines; 2) threats of marathon deliberations; 3) pressure for the surrender of conscientiously held beliefs; and 4) any implication of a false duty to decide. Roma v. State, 785 So. 2d 1269, 1271 (Fla. 5th DCA 2001). This court has held that it is fundamental error for the trial court to repeat a deadlock jury instruction and send a jury back for further deliberations after it has announced a second deadlock. Tomlinson v. *634 State, 584 So.2d 43, 45 (Fla. 4th DCA 1991). If the second note that the jury sent out is construed to be a second announcement of deadlock, then Tomlinson requires reversal. However, even if the second note does not constitute a second deadlock, the question still remains whether the circumstances show a coerced verdict.
A coerced verdict in a criminal case deprives the accused of a fair trial and is contrary to the mandate of the Declaration of Rights of the Constitution of the State of Florida. Webb v. State, 519 So.2d 748, 749 (Fla. 4th DCA 1988). A trial court should not couch an instruction to a jury or otherwise act in any way that would appear to coerce any juror to reach a hasty decision or to abandon a conscientious belief in order to achieve a unanimous position. See Thomas v. State, 748 So.2d 970, 976 (Fla.1999). The applicable standard of review is whether, under the totality of the circumstances, the trial judge's actions were coercive. Id.
Some of the factors which courts have looked at to determine whether a juror was coerced include: 1) whether the jury was placed under time pressure to return a verdict; 2) exhortation of the jury to consider extraneous and improper factors, such as the government's fiscal health, in arriving at a decision; 3) a potential holdout juror was isolated and demeaned for being in the minority; 4) a charge indicating that the jury was required to reach a unanimous verdict or that a juror had a duty to do so; 5) a threat of marathon deliberations; 6) whether the judge asked the jury what verdict the majority of the jurors favored; and 7) whether the judge singled out the minority jurors in imploring the jury to come to a decision. See Scoggins v. State, 691 So.2d 1185, 1189 (Fla. 4th DCA 1997), approved, 726 So.2d 762 (Fla.1999).
In Nelson v. State, 438 So.2d 1060, 1062 (Fla. 4th DCA 1983), Judge Glickstein succinctly observed:
It is the genius of our jury system that twelve impartial persons, individually, applying a subjective standard, come to a common conclusion of a defendant's guilt beyond a reasonable doubt. This fundamental principle becomes subverted if a jury member is pressured to defer to the opinion of his peers, for unanimity is made a sham thereby. An objective standard is in effect substituted for the subjective, by virtue of the implication that the majority opinion is reasonable, and the minority unreasonable.
In reviewing the second note and the court's instruction, we conclude that not only was the note an announcement of a second deadlock but the court's subsequent charge amounted to coercion.
The court's instruction pressured a holdout juror to conform to the views of his peers. The clear implication of the second note is that the jury was unable to reach a unanimous decision. The jury had singled out one of its members as the holdout and indicated that he was not following the law. The prosecutor believed that the second question indicated a continued deadlock of the jury and suggested that a mistrial may be in order. Instead, the trial court gave an additional instruction. Although this instruction is a standard instruction read at the beginning of deliberations, it appears unduly coercive to the holdout juror in the context that it was read after deliberations had progressed.
The instruction read by the court states:
You must follow the law as it is set out in these instructions. If you fail to follow the law, your verdict will be a miscarriage of justice. There is no reason for failing to follow the law in this case. *635 All of us are depending upon you to make a wise and legal decision in this matter.
Under these circumstances, this instruction implies that the court is agreeing with the majority that the holdout juror is not following the law, and it will be a miscarriage of justice if he fails to do so. The clear import of the instruction tells the holdout juror that he must join those other jurors who are following the law. That such coercion was successful is indicated by the announcement of a verdict only two or three minutes after deliberations resumed. This pressure on the holdout juror satisfies the test of coercion, and a coerced verdict is constitutionally impermissible. See Thomas, 748 So.2d at 980.
Even though defense counsel agreed with the charge, we still conclude that it constitutes fundamental error. As we said in Scoggins,
When confronting a claim that the jury's verdict was unconstitutionally coerced, our fundamental error analysis depends on the constitutional analysis. If the totality of the circumstances supports the finding of improper coercion of the jury, then there has been a type of constitutional violation which is fundamental error, and per se reversible.
691 So.2d at 1189. In this case, we conclude that because the totality of the circumstances indicate juror coercion, the verdict is fundamentally and constitutionally defective, regardless of defense counsel's failure to object.
For the foregoing reasons, we reverse the conviction and sentence of appellant and remand for a new trial.
STEVENSON, C.J., and TAYLOR, J., concur.