968 So.2d 125 (2007)
Mary WEBSTER, Petitioner,
v.
STATE of Florida, Respondent.
No. 4D07-3307.
District Court of Appeal of Florida, Fourth District.
November 21, 2007.
*126 Gregg S. Lerman, West Palm Beach, for petitioner.
Bill McCollum, Attorney General, Tallahassee, and Laura Fisher Zibura, Assistant Attorney General, West Palm Beach, for respondent.
PER CURIAM.
In this petition for writ of prohibition, petitioner seeks to prohibit her further prosecution on the charge of first degree murder in the case pending against her.[1] The court below declared a mistrial at the initial trial and then denied petitioner's written motion to dismiss on double jeopardy grounds. Because we conclude that there was no manifest necessity to declare a mistrial, double jeopardy bars further prosecution. Accordingly, we grant the petition.
Petitioner was charged with first degree murder (count one), robbery with a deadly weapon (count two), and grand theft (count three). The case went to trial on April 20, 2007. On May 7, 2007, at 3:30 p.m., the jury retired to begin deliberations. Two notes were sent out by the jury. At 5:10 p.m., the jury was sent home without reaching a verdict. Deliberations recommenced at 8:30 a.m. the following day. The jury sent out a third note at approximately 10:30 a.m. This note indicated that a few of the jurors were not willing to compromise to a lesser charge in count one and sought guidance as to how to proceed. The court met with both parties, with Webster present, and determined that a jury deadlock instruction would be appropriate. An Allen[2] charge was read to the jury. At 11:04 a.m., the jury resumed its deliberations. The jury then submitted a fourth note which requested a break.
As the jury was about to begin its break, the court was led to believe that a verdict had been reached. The judge had the jury enter the courtroom and inquired with the foreman as to whether a verdict had been reached. The foreman stated that a verdict had not been reached. The jury took its break and then continued its deliberations. At 1:50 p.m., a fifth note was submitted to the judge. The note contained the following request and question:
1) Please give a better explanation of principals.
2) Juror wants to know what happens to Mary Webster if there is a mistrial (hung jury) on the first count.
After conversing with the parties, the judge decided to inform the jury that he had given all the guidance he could as to the definition of "principal."
On the question about what happens in the case of a mistrial, the judge conversed with the parties in depth as to how to respond. The prosecutor wanted the *127 judge to inform the jury that it should not consider the consequences of a mistrial in making its decision. The judge then noted that this court had recently decided Rubi v. State, 952 So.2d 630 (Fla. 4th DCA 2007), wherein we interpreted an ambiguous jury note submitted after an Allen charge as a second deadlock note even though the jury did not specifically state that it was deadlocked. The judge was concerned that, as in Rubi, the note sent in the instant case could be interpreted as a second deadlock note. The judge inquired of the parties as to whether they thought the note could be interpreted as a deadlock note. The prosecutor said yes and defense counsel was not given a chance to complete his answer. However, the prosecutor then told the judge that he did not believe the jury was at an impasse and again asked the judge to simply instruct the jury not to be concerned about what happens if a mistrial were to occur. Defense counsel did not consent to a mistrial being declared.[3] Relying on Rubi, the court below, sua sponte, declared a mistrial as to count one.
On June 18, 2007, petitioner filed a motion to dismiss count one on double jeopardy grounds. A hearing was held on the motion. The motion was denied.

Discussion of Rubi
The court below relied primarily on Rubi as justification for its decision to order the mistrial and to deny petitioner's motion to dismiss count one. Thus, a synopsis of Rubi is necessary. In Rubi, the jury sent a note indicating deadlock. An Allen charge was read. The jury then sent another note which stated, "One of our jurors is assuming and speculating on the evidence. Based upon his responses he is not following the law. The facts of the case is [sic] being said to not be factual and/or-and/or [sic] not conceivable." Rubi, 952 So.2d at 632. During a discussion about the meaning of the note between the judge and the parties, the judge stated that he did not believe the note should be read as a statement of impasse. The prosecutor suggested dismissing the jury for the night and reconvening the following morning. Defense counsel suggested merely instructing the jurors to follow the law they had previously been given. The prosecutor also later stated that the note implied that the jury was at an impasse. After much discussion with the parties, the judge decided to instruct the jury about their duty to follow the law. A few minutes after this instruction was given, the jury returned a guilty verdict.
In Rubi, we found the note stating that a juror was not following the law to be an "announcement of a second deadlock." Id. at 634. We stated this because the note clearly implied that there was an irresolvable disagreement within the jury as to the facts of the case. We also emphasized that the note had singled out one member of the jury for not following the law. Because the majority of the jurors were pitted against a single member, the judge's instruction to follow the law implied that the judge agreed with the majority of the jurors that the holdout juror was not following the law. For this reason, we found the instructions given after the second note to be coercive even though the judge had merely repeated the standard instruction to follow the law as found in Florida Standard Jury Instruction (Criminal) 3.10(1).
*128 In the instant matter, the court below was placed in an awkward situation where it was given an ambiguous jury note after the jury had already been given an Allen charge. The court below believed the question  "Juror wants to know what happens to Mary Webster if there is a mistrial (hung jury) on the first count"  was a reference to a single juror and that any instruction to the jury would be unduly coercive to that single juror. The court also believed the fifth note could be interpreted as a second deadlock note. Thus, the lower court deemed Rubi to be on point and declared a mistrial as to count I.
However, the lower court misapplied Rubi in two crucial aspects. First, the note in Rubi unambiguously indicated that there was a single holdout juror. The note in the instant case, as acknowledged by the lower court,[4] is vague in indicating the number of holdout jurors. Second, the holdout juror in Rubi was questioning the evidence against the accused. This uncertainty on the behalf of the holdout juror was central to the issue of guilt and innocence. The question in the instant case concerned the consequences of a mistrial. This inquiry was not of the magnitude of the inquiry in Rubi. The instant query concerned a matter which was not within the province of the jury to contemplate. Thus, these critical differences should have been taken into consideration by the lower court when the court dealt with the jury's fifth note. As discussed below, the lower court had more options than it realized.

Discussion of Manifest Necessity
Our supreme court stated many years ago that if a jury is discharged, before reaching a verdict, for a legally insufficient reason and without the defendant's consent, such discharge is equivalent to an acquittal and precludes a subsequent trial for the same offense. State ex rel. Williams v. Grayson, 90 So.2d 710, 713 (Fla.1956); see also Jackson v. State, 855 So.2d 178 (Fla. 4th DCA 2003) (stating that the discharge of a jury for a legally insufficient reason, and without the defendant's consent and without manifest necessity, is equivalent to an acquittal). In other words, a trial judge should exercise the power to discharge a jury only in cases of manifest necessity. Spaziano v. State, 429 So.2d 1344, 1345 (Fla. 2d DCA 1983). As the Spaziano court stated:
[A] valid reason for declaring a mistrial must be predicated on either of two bases: (1) On some misfortune which, although the fault of neither party, renders continuation of the trial impossible or unreasonably prejudicial to the substantial interest of either the judicial process itself, the defendant, the state, or both, or (2) upon some unfair or wrongful tactic, action or conduct on the part of the defendant, by which a substantial interest in the state is unfairly frustrated or embarrassed.
Spaziano, 429 So.2d at 1346 (citing State ex rel. Mitchell v. Walker, 294 So.2d 124 (Fla. 2d DCA 1974)) (footnote omitted).
The record clearly demonstrates that the trial judge made a good faith attempt to follow the law. Nonetheless, he erred in sua sponte declaring a mistrial before there was a necessity to do so. The error had its genesis in the judge's attempt to divine meaning from an ambiguous jury note and as a result, he created for himself a false dilemma. The judge believed that any instruction to the jury concerning the question about a mistrial would result in *129 undue coercion upon a holdout juror. He assumed that there was a single holdout juror based upon the poorly worded and indefinite fifth note. He also determined the ambiguous note to be a second deadlock note.
There was no reason for the judge to speculate as to how many holdout jurors remained or for him to make assumptions about the meaning of the fifth note. The simplest solution in the instant matter would have been to seek clarification from the jury regarding the ambiguous note. Potter v. United States, 534 A.2d 943, 946 (D.C.App.1987) (stating that a trial court is not required to answer an ambiguous jury note without seeking clarification); Sharkey v. Lasmo, 55 F.Supp.2d 279, 293 (S.D.N.Y.1999) (stating that it is well-established that questioning the jury about an ambiguous jury note is permissible and clearly preferable to merely guessing at the meaning); State v. Whittaker, 326 N.J.Super. 252, 741 A.2d 114, 120 (1999) (stating that where a jury note is ambiguous, the trial judge should not assume any meaning from the note but should seek clarification).
Alternatively, the trial judge could have simply stated to the jury that it should not concern itself with the ramifications of a mistrial. See Conley v. Very, 450 F.3d 786, 788 (8th Cir.2006) (stating that if the jury appears to be focused on an irrelevant matter, then the court's response should disabuse the jury of its mistaken belief that an irrelevant matter is important to its decision). The court below should have taken one or both of these options before deciding to declare a mistrial. As these options show, the trial court certainly did not consider all practicable alternatives before making its decision. Thus, by declaring a mistrial, the lower court improvidently interrupted the natural progression of the trial before it had reached a point where the continuation of the trial was impossible.
Because the court below declared a mistrial without there being a manifest necessity to do so, the declaration had the effect of an acquittal. As such, we grant petitioner's petition for writ of prohibition and order count one against her be dismissed.
TAYLOR and HAZOURI, JJ., concur.
GROSS, J., concurs specially with opinion.
GROSS, J., concurring specially.
I concur in the majority opinion and write separately to emphasize my reasons and to discuss a 51 year old case which I find to be controlling.
In State v. Grayson, 90 So.2d 710, 713 (Fla.1956), the supreme court wrote that after a jury has been sworn in a criminal case, a trial judge "should exercise the power to discharge the jury only in cases of manifestly urgent and absolute necessity." I agree with the majority that to answer the jury's questions would not have presented the impermissibly coercive situation present in Rubi v. State, 952 So.2d 630 (Fla. 4th DCA 2007); see Scoggins v. State, 691 So.2d 1185, 1189 (Fla. 4th DCA 1997), approved, 726 So.2d 762 (Fla.1999) (setting out factors indicating improper coercion of jurors to reach verdict).
This area of the law does not require a defendant to timely voice an objection to a mistrial in order to raise a double jeopardy argument in a petition for writ of prohibition. In Grayson, one lawyer for the defendants did not object to the state's motion for mistrial; co-counsel for the defendants seemed to agree with the court's expressed belief that there would be no double jeopardy issue, but said he would not "bind himself on the point." Grayson, 90 So.2d at 712. Nonetheless, the supreme *130 court held that the defense attorneys had not "affirmatively consented to the granting of the State's motion," so that the "State made the motion at its peril." Id. at 714. The supreme court imposed the requirement that a mistrial must be granted with "the expressed consent" of a defendant when it is ordered for a legally insufficient reason. Id. This case presents weaker facts for "expressed consent" than Grayson.
NOTES
[1] A petition for writ of prohibition is the proper vehicle by which to challenge a ruling that permits the prosecution of a defendant in violation of her federal and Florida constitutional protections against double jeopardy. Jackson v. State, 855 So.2d 178, 179 (Fla. 4th DCA 2003).
[2] The standard Allen charge is set forth in Florida Standard Jury Instruction (Criminal) 3.06 and derived from Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).
[3] Defense counsel did not explicitly object to the mistrial being declared either. However, as noted in Spaziano v. State, 429 So.2d 1344, 1346 (Fla. 2d DCA 1983), "A defendant's silence or his failure to object or protest against an illegal discharge of the jury before a verdict, does not constitute a consent, and is not a waiver of the constitutional prohibition against a subsequent trial for the same offense if the jury has been improperly discharged."
[4] In its order on the motion to dismiss, the lower court left open the possibility that the fifth note could be interpreted to mean that more than one juror wanted to know what happened to petitioner if a mistrial was declared. However, the court performed its analysis primarily on the assumption that there was a single holdout juror.